Joyce L. LYNCH, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Feb. 5, 1991.
Decided March 13, 1991.

Bernard J. O'Donnell (argued), and Duane D. Werb, Office of the Public Defender, Wilmington, for appellant Joyce L. Lynch.

Gary A. Myers, Dept. of Justice, Wilmington, for the State.

Before MOORE, WALSH and HOLLAND, JJ.

MOORE, Justice.

The appellant, Joyce L. Lynch ("Lynch"), was convicted of two counts of first degree murder, one count of unlawful imprisonment, one count of burglary, one count of

conspiracy and one count of possessing a deadly weapon during the commission of a felony. The jury failed to impose the death penalty and sentenced Lynch to life imprisonment.

Lynch raises three issues on appeal: (a) whether the trial court abused its discretion and committed reversible error in denying Lynch's motion for a mistrial based on the publication of a juror profile article in a newspaper of statewide circulation; (b) whether the trial court committed plain error in dealing with the media's actions at trial; and (c) whether the trial court abused its discretion in admitting into evidence a tape recording of a 911 emergency telephone call and a photograph of one of the murder victims.

We find no merit to Lynch's claims, and affirm on all issues.

### I.

On Christmas Eve morning of 1987, five year old Rebecca Ann Gibson and her one year old brother, John Gregory Gibson, awoke to find their father, Joseph Gibson, Jr., shot to death. Rebecca spoke to officials via the 911 emergency telephone number, described the scene of the murder, and ultimately directed the police to her home. The call was taped, transcribed, and introduced at trial. When the police arrived, they found the bodies of Joseph and Beverly Gibson, the father and mother of the children, and discovered that a third child, Matthew, had been abducted.

An extensive investigation led the police to the home of Richard and Joyce Lynch. Both the murder weapon and little Matthew Gibson, who the Lynches had renamed Richard Lynch, III, were found there. The Lynches were arrested. At his separate trial, Richard Lynch was acquitted of all charges against him.

### II.

This case and its trial generated extensive interest and publicity. Following selection of the jury, the *News–Journal*, a statewide newspaper, published a vignette of each juror.[1] Since the jurors were not sequestered, Lynch argued that they could not be impartial as a result of the article. She moved for a mistrial. The trial court conducted individual *voir dire* of each juror to determine the knowledge each had of the article and its effect on his or her ability to remain impartial.[2] The trial court was satisfied with the responses and denied Lynch's mistrial motion.

Lynch asserts two arguments regarding the juror profile article: (a) that it was inherently prejudicial; and (b) that the trial court incorrectly conducted the individual *voir dire*.

#### A) *Inherent Prejudice*

■ The standard in Delaware regarding improper jury influence is well settled. A defendant must prove that he or she "was 'identifiabl[y] prejudice[d]' by the juror misconduct, unless the defendant can establish the existence of 'egregious circumstances,' —i.e., circumstances that, if true, would be deemed inherently prejudicial so as to raise a presumption of prejudice in favor of the defendant." *Massey v. State*, Del.Supr., 541 A.2d 1254, 1257 (1988) (citations and quotations omitted). Therefore, "if a defendant can show that there is a reasonable probability of juror taint of an inherently prejudicial nature, a presumption of prejudice should arise that defendant's right to a fair trial has been infringed upon." *Massey*, 541 A.2d at 1257 (citing *Hughes v. State*, Del.Supr., 490 A.2d 1034, 1046–1048 (1985)).

Lynch contends that the juror profile article constituted an egregious circumstance which created a presumption of inherent prejudice. However, on the basis of this

---

**1.** In addition to giving the jurors' names, occupations, addresses, marital status, and the number of children and grandchildren they had, the profiles were often unflattering. Various jurors were described as "stout", having a "stern expression" or a "stern demeanor", "grandmotherly", "admits to a hearing problem", "rotund,

mostly bald", "short and round", "balding and thin", and "heavyset, balding."

**2.** The *voir dire* consisted of separate questions to each juror in which that juror's specific profile was read and was then asked if such profile would affect his or her ability to be impartial.

record we do not find the alleged prejudice here to rise to that described in *Hughes* or *Massey*. In *Hughes*, we held that inherent prejudice existed because the jury obtained knowledge that "the defendant had been previously tried and convicted of the offense which became the subject of a retrial." *Hughes*, 490 A.2d at 1040. In *Massey*, we addressed a presumption of inherent prejudice arising from a juror's alleged use of alcohol and drugs. *Massey*, 541 A.2d at 1259. While a juror profile article is potentially embarrassing to jurors, and was of questionable taste, if not journalistic responsibility, on this record the profile does not establish juror prejudice. Coupled with the jurors' unequivocal statements on voir dire, and the trial judge's opportunity to observe their demeanor and assess their credibility, it cannot be the basis of a reversal.

B) *Voir Dire*

■ The trial court's use of individual *voir dire* attempted to ascertain and cure any prejudice caused by the juror profile article. The trial judge had the responsibility to determine juror impartiality. Because of his opportunity to question the jurors and observe their demeanor, he was in the best position to evaluate their ability to render a fair and impartial verdict. *See Dawson v. State*, Del.Supr., 581 A.2d 1078, 1089–1093 (1990). Further, the trial court is given broad discretion concerning the scope and form of questions to be asked on *voir dire*. *Riley v. State*, Del.Supr., 496 A.2d 997, 1006 (1985), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

Lynch argues that the trial court abused its discretion by asking leading questions on *voir dire*.[3] However, the decision as to the form of questions asked on *voir dire* is clearly within the discretion of the trial court. *Riley*, Del.Supr., 496 A.2d at 1006. Moreover, defense counsel was unable to suggest a more effective means of examining the jurors on the subject. In this case, the use of leading questions was entirely appropriate to permit the trial judge to assess each juror's impartiality as a result of the profile article. There was no abuse of discretion.

### III.

■ We turn to Lynch's argument that the trial court committed plain error in dealing with other media conduct at trial. Lynch claims that her trial was transformed into a "media circus" because: (a) the media followed the jury to lunch on one occasion; and (b) a *News–Journal* photographer took pictures of the jury as it left the courthouse and boarded a bus. However, Lynch did not object to any of this at trial. As such, under Supreme Court Rule 8, and absent plain error, she waived her right to challenge these issues on appeal.

We will find plain error only if the media's actions caused the jury to lose its impartiality toward Lynch, thereby prejudicing her right to a fair trial. However, in this case, no evidence existed that the jury was influenced against her by the media's actions. While the record clearly establishes that the jurors were angered by the media's conduct, it is also equally clear that this anger was directed solely toward the media, and not against Lynch. In fact, the trial judge repeatedly admonished the jury not to associate with the media or to read or listen to media reports about the trial. On this record Lynch has failed to establish that the jury was influenced by the media's actions. She was not deprived of her right

3. The following is an example of the questions asked by the trial judge and the answers he received:

THE COURT: ... Will this publication affect your ability to be a fair and impartial juror in this case?
A: Not to my knowledge, no.
THE COURT: Will you be able to render a fair and impartial verdict based solely upon the evidence presented in court and under the law as presented to you?
A: I believe so.
THE COURT: Will you be able to render such a verdict without being influenced by sympathy, vengeance, fear, favor or bias of any kind including possible fear of criticism or possibility of favorable comment?
A: I believe I can.
THE COURT: Please return to the jury room. *State v. Lynch*, Del.Super., No. IK88–01–0040, Ridgely, J. (June 6, 1989) (trial transcript) (*See* Appellant's Appendix at A–449–450).

to a fair trial, nor was plain error committed.

## IV.

 During its case-in-chief, the prosecution offered into evidence a tape recording of Rebecca Gibson's emergency telephone call, reporting her parents' death, and a photograph of Joseph Gibson lying dead on the kitchen floor. Lynch objected to the admission of these items, alleging that their prejudicial effect substantially outweighed their probative value. D.R.E. 403. The trial court overruled Lynch's objections and admitted both items into evidence.

D.R.E. 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." The trial court heard extensive arguments from both sides concerning the probative value of the tape and the photograph. Lynch argued that both should be excluded because they were intended to inflame the passions of the jury. The State argued that: (a) the probative value of the tape went to proving the integrity of the crime scene;[4] and (b) the photograph was probative in establishing the exact location of Joseph Gibson when he was murdered.[5] The trial court, finding that the probative value of both items outweighed any unfair prejudice, overruled

Lynch's objections and admitted the items into evidence.

We have stated that "the determination of whether the probative value of a particular piece of evidence is substantially outweighed by the danger of unfair prejudice is a matter which falls particularly within the discretion of the trial judge, who has the first-hand opportunity to evaluate relevant factors." *Williams v. State*, Del. Supr., 494 A.2d 1237, 1241 (1985). The trial judge heard extensive arguments concerning the issues and clearly had a first-hand opportunity to review the evidence. Moreover, the State's other evidence implicated Lynch in the murders. There was sufficient evidence to convict Lynch wholly apart from the 911 tape and the photograph. On this record there was no abuse of discretion in admitting the tape and photograph. We find no merit in the defendant's remaining contentions regarding the admission of these items into evidence.

The judgment of the Superior Court is affirmed.

---

4. The State argued that the integrity of the crime scene was important with regard to whether the children disturbed the body before the police arrived.

5. Lynch contended that Joseph Gibson was shot outside the house and then dragged into the kitchen. However, the State argued that this photograph established that Gibson was shot twice in the kitchen.