**Darrell HOVINGTON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 6, 1992.
Decided: Nov. 30, 1992.

**830**

E. Stephen Callaway, Asst. Public Defendant, Georgetown, for appellant.

Gary A. Myers, Deputy Atty. Gen., Georgetown, for appellee.

Before HORSEY, MOORE, and HOLLAND, JJ.

HOLLAND, Justice:

The defendant-appellant, Darrell Hovington ("Hovington"), was tried before a jury in the Superior Court in and for Sussex County. He was convicted of Trafficking in Cocaine.[1] Hovington filed a timely direct appeal with this Court.

The central issue in this appeal is whether the Superior Court's ruling that a slip of paper seized from Hovington's pocket by the police was admissible as evidence at his trial. Hovington has raised the same two contentions before this Court that he presented to the Superior Court. First, he argues that there was no probable cause for his warrantless arrest. Therefore, Hovington argues, if the search of his person was not incident to a lawful arrest, the fruit of that search, i.e., the slip of paper, was inadmissible as evidence. Second, Hovington contends that, even if there was probable cause for his warrantless arrest and the search of his person, the slip of paper should have been excluded from evidence because it was irrelevant and prejudicial.

After a careful consideration of the record, we have concluded that there was probable cause for Hovington's warrantless felony arrest. Consequently, the slip of paper which was recovered during a search incident to that lawful arrest was admissible as evidence. Additionally, the record reflects that the Superior Court

---

1. Hovington was charged with one count of "trafficking in cocaine," in an amount larger than one hundred grams under 16 Del.C. § 4753A(a)(2)(c) and one count of resisting arrest under 11 Del.C. § 1257. A trial by jury was held on November 7, 1991. The jury returned a verdict of guilty to the count of trafficking in cocaine and not guilty to the count of resisting arrest.

properly exercised its discretion in ruling that the slip of paper was relevant and admissible as evidence, notwithstanding its prejudicial effect upon Hovington. Therefore, we affirm Hovington's conviction of Trafficking in Cocaine.

## Facts

The facts are not in dispute. Agents of the federal Drug Enforcement Administration (DEA) made two separate purchases of crack cocaine, as part of an ongoing investigation into cocaine trafficking in the Ellendale area. Both purchases occurred in a secluded location described as an "open air drug market". The first purchase took place on July 25, 1991 when a DEA agent purchased crack cocaine from a man named Cornelious Haugabook ("Haugabook"). The second purchase took place on the morning of August 1, 1991 when a DEA agent bought crack cocaine from a man named Clavis Augustin ("Augustin"). Based upon these two transactions, the DEA agents obtained arrest warrants on August 1, 1991 for both Haugabook and Augustin.

Later that same afternoon, a task force of officers from the DEA, Delaware State Police and the Bureau of Alcohol, Tobacco and Firearms (ATF) executed the arrest warrants. The officers approached the secluded area near Ellendale in an unmarked van. Detective Murray of the Delaware State Police testified that as he and the other law enforcement officers exited the van, Hovington, Haugabook and Augustin all ran away.[2]

Detective Murray chased after Hovington. Detective Murray testified that when he exited the van, he observed Hovington seated outside at a table, apparently eating lunch with Haugabook and Augustin, the two persons for whom the warrants were

issued. He also testified that when the chase began, Hovington had "some objects" in his hands, which Detective Murray was not then able to identify.

Hovington ran behind a burned-out mobile home. Detective Murray ran along the other side of that structure in pursuit of Hovington. As Detective Murray ran, he was able to see Hovington only from the chest area up. He never actually saw Hovington discard anything. However, when Hovington emerged from behind the mobile home, he had nothing in his hands. Detective Murray and Detective Davis forced Hovington to the ground at gun point.

Hovington was advised that he was under arrest for "suspicion of narcotics." Detective Kline hand-cuffed Hovington and escorted him to an area approximately twenty yards from the burned-out mobile home. Detective Kline then searched Hovington incident to his arrest. During that search, Detective Kline removed a small slip of paper, containing names and initials with corresponding numbers, from Hovington's front pocket. The slip of paper also had the notation, "4¼ ounce".

After Hovington, Haugabook and Augustin were all in custody, the law enforcement officers searched the area. Detective West of the Delaware State Police testified that it is standard police practice, after apprehending fleeing persons, to search for evidence that might have been discarded.[3] Upon searching the area behind the burned-out mobile home, along which Hovington had run, Detective West recovered one package of what appeared to be crack cocaine laying in the grass. A second similar package was found laying on the ground near the burned-out mobile home.[4]

---

**2.** Detective Murray testified that all of the federal agents, while plain-clothed, wore either ATF or DEA raid jackets. The Delaware State Police, also plain-clothed, either wore or displayed badges on their holster straps. Hovington testified that he did not see any of this identification.

**3.** In support of his testimony that a search of the entire area for discarded evidence was standard police practice, Detective West stated that

he had participated in more than one hundred of these types of searches during his fourteen years of service as a police officer.

**4.** A DEA toxicologist testified that both packages contained crack cocaine. The toxicologist also testified that the combined weight of the two packages of cocaine was 122 grams or approximately 4¼ ounces.

*Execution of Arrest Warrants
Hovington's Pursuit and
Detention*

■ As a preliminary matter, Hovington contends that the law enforcement officers had no legal authority to pursue and detain him when they arrived to execute the arrest warrants for Haugabook and Augustin. In assessing the propriety of detaining an occupant of premises which were being searched pursuant to a valid warrant, the United States Supreme Court has stated:

> both the law enforcement interest and the nature of the "articulable facts" supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest of minimizing the risk of harm to the officers.... [T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

*Michigan v. Summers*, 452 U.S. 692, 702, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981). The same rationale applies to the execution of a warrant to arrest someone for a narcotics violation. *See Maryland v. Buie*,

494 U.S. 325, 110 S.Ct. 1093, 1097–1098, 108 L.Ed.2d 276 (1990); *Accord Downs v. State*, Del.Supr., 570 A.2d 1142 (1990).[5]

When the officers arrived to execute the arrest warrants, Hovington and the subjects of those warrants (Haugabook and Augustin) all fled. Hovington's flight in response to a showing of lawful authority, in the context of the background facts known to the officers, supplied a reasonable basis for pursuing Hovington for the purpose of conducting an investigative stop. *U.S. v. Lane*, 909 F.2d 895, 899 (6th Cir.1990).[6] The officers were operating in a potentially dangerous secluded area, already known to them for its narcotics trade. Hovington may have been fleeing to destroy evidence or to obtain weapons. *Michigan v. Summers*, 452 U.S. at 702, 101 S.Ct. at 2594. By pursuing Hovington as he fled from the scene, the officers acted properly in exercising "unquestioned command of the situation" in order to minimize the risk of harm to themselves and all persons who were present. *Id.*

*Probable Cause Hovington's
Warrantless Arrest*

■ When the law enforcement officers apprehended Hovington at the end of the burned-out mobile home, he was arrested for "suspicion of narcotics."[7] A peace officer is authorized to make a warrantless

**5.** In *Downs,* when the driver of an automobile was arrested for a narcotics violation, albeit *without* a warrant, this Court held that the occupants of that automobile were properly subjected to an "investigatory stop." *Downs v. State,* 570 A.2d at 1144; *U.S. v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir.1971) (all companions of arrestee within immediate vicinity, capable of accomplishing a harmful assault upon officers, are subject to "pat-down" reasonably necessary to assure they are unarmed).

**6.** While the officers' knowledge about the area in which they were operating and the fact that they were executing two valid arrest warrants "are important background facts, the suspect['s] conduct is essential to complete the whole picture." *U.S. v. Lane,* 909 F.2d 895, 899 (6th Cir.1990). In this case, the DEA agents had recently made purchases of crack cocaine and had warrants for the arrest of the two persons seated with Hovington. The arrest warrants were being executed in what was described as

an "open air drug market." Hovington's flight with Haugabook and Augustin "invited pursuit, and along with the background facts, supplied the officers with a reasonable basis for conducting an investigative stop." *Id. Accord Downs v. State,* 570 A.2d 1142 (1990). *See also U.S. v. Haye,* 825 F.2d 32, 34 (4th Cir.1987) (valid *Terry* stop where suspect fled from identified law enforcement agent); *U.S. v. Pope,* 561 F.2d 663, 668–69 (6th Cir.1977) (flight in the face of lawful authority invites pursuit and colors prior apparently innocent conduct); *U.S. v. Crittendon,* 883 F.2d 326, 328 (4th Cir.1989) (flight of companion of burglary suspect created reasonable suspicion to pursue and detain companion).

**7.** Hovington does not contend he was arrested prior to his actual apprehension. *See Downs v. State,* Del.Supr., 570 A.2d 1142, 1144–45 (1990) and *California v. Hodari D.,* — U.S. —, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

arrest for a felony whenever there is "reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." 11 *Del.C.* § 1904(b)(1). The phrase "reasonable ground to believe," as used in the Delaware statute, has been construed to mean "probable cause". *Thompson v. State*, Del.Supr., 539 A.2d 1052, 1055 (1988).

■ This Court has long recognized that "[p]robable cause is an elusive concept which avoids precise definition ... It lies somewhere between suspicion and sufficient evidence to convict." *Id.* (quoting *State v. Cochran*, Del.Supr., 372 A.2d 193, 195 (1977)). The United States Supreme Court has concluded that probable cause must be measured by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This requires a case-by-case review of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Thompson v. State*, 539 A.2d at 1055 (quoting *Illinois v. Gates*, 462 U.S. at 231, 103 S.Ct. at 2328).

The Superior Court ruled that under the totality of the circumstances, the police had probable cause to arrest Hovington when he was apprehended at the end of the burned-out mobile home. The Superior Court based its ruling upon the following facts: Hovington was in a secluded area which was known to the police as an "open air drug market"; Hovington was seated next to two men who were charged in arrest warrants with selling drugs to undercover agents in that area; one of the drug sales had taken place earlier the same day; Hovington fled when the police identified themselves, with unknown objects in his hand; and Hovington apparently discarded those objects during his flight.

■ The Superior Court properly measured the totality of the circumstances in this case by a review of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Thompson v. State*, 539 A.2d at 1055 (quoting *Illinois v. Gates*, 462 U.S. at 231, 103 S.Ct. at 2328).[8] *See also Jarvis v. State*, Del.Supr., 600 A.2d 38, 42 (1991). First, the known reputation of an area for crime ("high-crime" character) is a relevant factor in determining whether probable cause exists. *Jarvis v. State*, Del. Supr., 600 A.2d 38, 41 (1991); *U.S. v. White*, 655 F.2d 1302, 1304 (D.C.Cir.1981). Second, while flight alone is not a "reliable indicator of guilt without other circumstances to make its import less ambiguous", flight or evasion may be properly considered in assessing probable cause when coupled with additional factors relating the suspect to evidence of a crime. *U.S. v. Green*, 670 F.2d 1148, 1152 (D.C.Cir. 1981); *Downs v. State*, Del.Supr., 570 A.2d 1142, 1144 n. 2 (1990). *See Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). *See also U.S. v. Lima*, 819 F.2d 687, 689 (7th Cir.1987); *United States v. Embry*, 546 F.2d 552 (3d Cir.1976). Third, when Hovington was ordered to stop by the law enforcement officers, he refused. *State v. Morrow*, Del. Supr., 603 A.2d 835, 838 (1992). Finally, the fact that Hovington apparently attempted to conceal the nature of the object he was carrying when he fled may also be a relevant consideration in determining probable cause. *See U.S. v. Green*, 670 F.2d at 1153.

The record supports the Superior Court's ruling that there was probable cause to arrest Hovington when he was apprehended. *Downs v. State*, Del.Supr., 570

---

8. After reciting the facts reflected in the record, the trial judge ruled:

> [W]hat we have is a Federal and State Task Force coming to an area which, by the nature of previous investigation, indicates that there is a high volume of drug sales in that area.... They went to the spot where the sales were made. They exited the vehicle and identified themselves as police officers.

> An individual, according to [the] testimony, exited the scene and fled from the police officers with something in his hands, and, according to [the] testimony, also, sixty feet later, after running behind the building, had disposed of what was in his hands.... [U]nder those circumstances, the officer had probable cause to make an arrest....

A.2d 1142, 1144 n. 2 (1990).[9] Assuming, arguendo, that none of the above factors taken alone is sufficient to establish probable cause, when combined, they support the Superior Court's determination that, under the totality of the circumstances, there was probable cause for Hovington's arrest. *Jarvis v. State*, 600 A.2d at 41–43; *Illinois v. Gates*, 462 U.S. at 243–244 n. 13, 103 S.Ct. at 2335 n. 13; *U.S. v. Green*, 670 F.2d at 1153. Consequently, we hold that the Superior Court properly determined that the slip of paper, which was removed from Hovington's pocket following a search of his person, was seized incident to a lawful arrest. *Jarvis v. State*, 600 A.2d at 43; 11 *Del.C.* § 2303(1), (2)(d)[10].

### *Evidentiary Ruling Exercise of Discretion*

■ Hovington was charged and convicted with "trafficking in cocaine" under 16 *Del.C.* § 4753A(a)(2)(c) (1990 Supp.)[11] The Superior Court ruled that the slip of paper was admissible as relevant to Hovington's possession of the two bags of crack cocaine. The Superior Court's ruling was based upon the fact that the notation of "4¼ ounce" on the slip of paper tended to correspond to the amount of crack cocaine found along the path which Hovington had fled.

The determination of relevancy, "is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." D.R.E. 402. *Baynard v. State*, Del.Supr., 518 A.2d 682, 692 (1986); *Lampkins v. State*, Del.Supr., 465 A.2d 785, 790 (1983).[12] "The determination of whether the probative value of a particular piece of evidence is substantially outweighed by the danger of unfair prejudice is [also] a matter which falls particularly within the discretion of the trial judge, who has the first-hand opportunity to evaluate the relevant factors". *Lynch v. State*, Del. Supr., 588 A.2d 1138, 1141 (1991) (quoting *Williams v. State*, Del.Supr., 494 A.2d 1237, 1241 (1985)); D.R.E. 403.[13]

The trial judge heard extensive arguments concerning the admissibility of the slip of paper and had a first hand opportunity to review that evidence. *Lynch v. State*, 588 A.2d at 1141. After careful consideration, the trial judge ruled:

> I understand that there is some prejudice involved in this. But I believe it is ad-

---

**9.** In *Downs,* the defendant was a passenger in a motor vehicle. When the driver was arrested, the police displayed their badges and ordered the defendant to get out of the vehicle. The police officers guns were drawn. However, like Hovington, instead of complying, the defendant fled, taking a blue bag with him which was discarded during the chase. The chase ended with the defendant's apprehension. When the blue bag was recovered by the police, it was determined to contain crack cocaine. *Downs v. State,* 570 A.2d at 1143.

**10.** 11 *Del.C.* § 2303(1), (2)(d) reads in pertinent part:
A Search of a person ... may be made without a warrant if:
(1) The search is made incidental to and contemporaneously with a lawful arrest;
(2) The search is made in order to find and seize:

.   .   .   .   .

(d) Evidentiary matter pertaining to the commission of a crime.

**11.** 16 *Del.C.* § 4753A(a)(2)(c) reads in pertinent part as follows:
(2) Any person who, on any single occasion, knowingly sells, manufactures, delivers or brings into this State, or who is knowingly in

actual or constructive possession of, 5 grams or more of cocaine ... is guilty of a class B felony, which felony shall be known as "trafficking in cocaine." If the quantity involved:
...
(c) Is 100 grams or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 years and to pay a fine of $400,000.

**12.** Delaware Uniform Rule of Evidence 401 defines "Relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Delaware Uniform Rule of Evidence 402 states in pertinent part: "All relevant evidence is admissible.... Evidence which is not relevant is inadmissible."

**13.** Delaware Uniform Rule of Evidence 403 states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

missible. Almost all evidence that is admitted is prejudicial. The question is whether it is unduly prejudicial, and I think it is necessary in order to explain the notation "four-and-a-quarter ounces".

Hovington's contention that the trial judge abused his discretion in admitting the slip of paper into evidence is not supported by the record. *Id.*

### Conclusion

The judgment of the Superior Court is AFFIRMED.