**Anthony J. QUARTARONE, Individually and as Next Friend of Mario Quartarone, Plaintiffs**

**v.**

**KOHL'S DEPARTMENT STORES, INC., Defendant.**

**Civ.A. No. 06C–01–366–JOH.**

Superior Court of Delaware, New Castle County.

Submitted: Oct. 31, 2008.
Decided: Feb. 2, 2009.

---

4. *See: Baumann v. State,* 891 A.2d 146 (Del. 2005).

Gary W. Aber, Esquire, of Aber Goldust Baker & Over, Wilmington, DE, for plaintiffs.

Raymond W. Cobb, Esquire, of the Law Offices Raymond W. Cobb, LLC, Wilmington, DE, for the defendant.

### OPINION

HERLIHY, Judge.

Anthony Quartarone, individually and on behalf of his minor son Mario, has sued Kohl's Department Store, Inc. for malicious prosecution and violation of his civil rights. The latter action involved a federal civil rights claim causing Kohl's to remove the entire case to District Court. That court dismissed Quartarone's civil rights claim and the matter returned to this Court for resolution of the malicious prosecution claim.

Kohl's has moved for summary judgment on that claim. The claim arises out of an arrest and prosecution of Quartarone for shoplifting. He was ultimately found not guilty of that charge. There are six elements to a malicious prosecution claim.

One, which is most important for the purposes of this opinion, is that Quartarone must prove that Kohl's lacked probable cause to have him arrested for shoplifting.

The material facts surrounding the issue of the presence or absence of probable cause are not in dispute. However, what was unclear, under prior case law, was who in a malicious prosecution action makes the ultimate decision of probable cause, the jury or a judge. Because the material facts surrounding the issue of probable cause are not in dispute, this Court holds (1) it, not a jury, makes the ultimate determination of whether there was probable cause and (2) in this case, there was probable cause.

Because Quartarone will not be able to show one of the essential elements of malicious prosecution, want of probable cause, Kohl's motion for summary judgment is **GRANTED.**

### *Factual Background*

On March 9, 2002, Patrick Twisler was working for Kohl's as a loss prevention supervisor. As of that date, he had been in loss prevention for about two years. On that same date, Michael Markson was working for Kohl's loss prevention department. He had approximately five years experience in loss prevention between two department stores.

They were on duty when Quartarone, his nine year old son, Mario, and a family friend came into the Kohl's store on Concord Pike. Quartarone and his son had already been to several other stores already looking for a specific pair of sneakers. They went into the shoe department. Twisler saw Quartarone wearing a jacket with "KISS 101.7 FM" on it. Twisler recalled a pervious occasion in which he had suspected a shoplifter who wore the same jacket and that Quartarone looked familiar. Twisler's suspicions were aroused.

As a result, Twisler communicated with Markson to use the store's camera system to surveil Quartarone. Twisler then went to the office where the monitors are located and, along with Markson, observed Quartarone, Mario and the family friend.

Quartarone and the friend looked through various boxes to find the desired shoes. There were no Kohl's employees on duty to assist the Quartarone party. Eventually, Quartarone picked out a box with Nike sneakers in it, placed the shoes on his son's feet and put the empty box back on the shelf. He put the shoes his son had been wearing in their cart and placed his jacket on top of them. He tried on several pairs of dress shoes as well.

After doing this, Quartarone removed the old sneakers from the cart. He went to or was in the children's area of the store and left that area without doing anything with the old shoes. Twisler and Markson saw Quartarone with his son's "old" sneakers in his hand. He walked around the shoe department, opening boxes, looking inside them but at that point did nothing with the "old" shoes. Eventually, he put them on top of a shoe box behind some other merchandise.

Quartarone, his son, and the friend went to another area of the store where they tried on some clothes. They returned to the shoe department where one of them took a Nike shoe box out of the cart and placed the box on a shelf. These shoes and box were not the same as the shoes on Mario's feet or the box which had held them.

Quartarone, Mario and the friend went to one of the cashiers. Twisler called the cashier seeking to know if Quartarone had made any effort to purchase shoes. She said he had not. Quartarone paid for items giving Kohl's a check for $171. The Nike shoes on Mario's feet were not included in the total amount of the check.

Nor was any box or price tag presented to the cashier for payment for the Nike sneakers.

After waiting for the friend to go to the bathroom, all three left the store where Markson stopped them just outside the main exit door. Markson testified all three went willingly to the loss prevention office.

A conversation ensued about the unpaid shoes. Quartarone said he simply forgot. At this point, he was cooperative. He explained the store was hot, they had been running around trying things on and had gotten sweaty. Quartarone explained, therefore, he just wanted to get out of the store. He offered to pay for the shoes. Twisler presented him with a "trespass admonition" form which would have acted as (1) an admission to shoplifting and (2) a bar to returning to any Kohl's store. Quartarone refused to sign the form. Around this time, he said it was all a mistake, he worked for a radio station, he was a federal officer and was going to contact a lawyer. He wanted to return the merchandise and get his $171 check back. Kohl's refused his offers.

At one point while Quartarone was in the office, Twisler stepped out of the room to call his supervisor to apprise him of what was happening. Then, or at another point, he stepped out of the office to call the State Police. When he returned to the office, Quartarone was being less cooperative. The conversation became tense. Twisler asked the friend to take Mario out of the office, and he left the office again to re-contact the State Police to insure troopers were on the way. The friend did not leave at first and helped calm Quartarone when it seemed the controversy between Twisler and Quartarone was intensifying.

After two State Police officers arrived, Twisler explained the "incident" to them.

They arrested Quartarone for shoplifting. Quartarone had been held about forty minutes.

His trial occurred in two parts on separate days. Twisler testified in the first part, Markson and Quartarone in the second. During Markson's testimony the surveillance tape was presented to the trial judge. At the end of the State's case, Quartarone moved for judgment of acquittal. The Court, in considering the motion, narrowed its focus to one of the various subsections applicable to shoplifting to 11 Del. C. § 840(a)(1):

> (a) A person is guilty of shoplifting if, while in a mercantile establishment in which goods, wares or merchandise are displayed for sale, the person:
>
> (1) Removes any such goods, wares or merchandise from the immediate use of display or from any other place within the establishment, with intent to appropriate the same to the use of the person so taking, of to deprive the owner of the use, the value or possession thereof without paying to the owner the value thereof.

Based on the testimony of Twisler, Markson and the video surveillance, the court below denied the motion using the proper standard: ". . . could any rational trier of fact, viewing the evidence in the light most favorable to the State, find the essential elements of (shoplifting)." [1]

Quartarone testified after his motion was denied, disputing portions of Markson's and Twisler's testimony. At the conclusion of the case, the trial judge found Quartarone not guilty, finding all of the evidence to be evenly balanced. This meant the State had not met its burden of proof beyond a reasonable doubt.

This law suit ensued. Quartarone sued for malicious prosecution and for a violation of his civil rights under 42 U.S.C. § 1981. Kohl's removed this case to the United States District Court because of that latter claim. That Court dismissed the "1981" action on Kohl's motion for summary judgment, stating in part:

> There is no dispute that plaintiffs were permitted to shop and to pay for merchandise before leaving Kohl's. There likewise is no dispute that plaintiffs completed their transaction with Kohl's without paying for the shoes that Mr. Quartarone's son was wearing. Indeed, plaintiffs do not dispute that there was probable cause for the shoplifting charge; their dispute is with the continued prosecution of the charge once Mr. Quartarone had offered his explanation, which explanation was ultimately accepted by a judge after trial.[2]

Following the District Court's ruling, the malicious prosecution claim was brought back to this Court.

## Parties' Contentions

Kohl's contends that summary judgment is proper for the malicious prosecution claim and makes two arguments in support of that contention. First, it states that the *arrest* was made by Delaware State Police and prosecuted by the State of Delaware. Therefore, Kohl's argues that because malicious prosecution requires *it* to be the initiator of the prosecution, it is not the proper defendant. Second, Kohl's argues that Quartarone is not able to make a prima facie case of malicious prosecution

---

1. *Fortt v. State,* 767 A.2d 799, 803 (Del.2001).

2. *Quartarone v. Kohl's Dept. Stores, Inc.,* 2005 WL 2183172 (D.Del. Sept. 12, 2005) (citing *State v. Quartarone,* C.A. No. 02–03–010446, at 148–49 (Del. Com. Pl. Feb. 4, 2003)).

against it. Kohl's position is that the basic facts and circumstances involving Quartarone and his son comprised a sufficient basis for probable cause for shoplifting. Where probable cause existed, it contends, there cannot be a claim for malicious prosecution.

The Quartarones assert they have all the necessary elements to proceed to a jury for their claim. They argue the State's prosecution of Quartarone does not prevent him from bringing a claim of malicious prosecution against Kohl's because Kohl's was the primary initiating party of the criminal case. He also contends that a jury should be able to hear evidence concerning the alleged racial targeting used by Kohl's in order to determine whether Kohl's had the requisite malice which is another element of a claim for malicious prosecution.

For the element of want of probable cause, Quartarone argues that probable cause did not exist or, in the alternative, that there are least enough facts in dispute which would save his lawsuit from summary judgment dismissal. Specifically, he maintains that when the police arrived after being detained by Kohl's employees, a reasonable person assessing the circumstances would have found a lack of probable cause. To support that contention, Quartarone points out that Kohl's had his personal information from his check, including his address and driver's license. Further, he contends that Kohl's should have reasonably considered that he had paid for the other merchandise by check and that most shoplifters do not pay for other goods when attempting to shoplift. Finally, he admitted to forgetting to pay

for the shoes and offered to pay for them. In sum, Quartarone has argued that a jury should be afforded the opportunity to determine whether there was probable cause to arrest him.

### Applicable Standard

In order for the moving party to obtain summary judgment, that party must bear the burden of showing the Court that no genuine issue of material fact is present and is entitled to judgment as a matter of law.[3] When considering a motion for summary judgment, the Court must view the facts and circumstances in a light most favorable to the non-moving party.[4] Summary judgment is improper when a material fact or an inference that might be drawn from a material fact is in dispute.[5] When the moving party can establish that there is no genuine issue of material fact, summary judgment may be appropriate.[6]

### Discussion

■■■ To make a claim of malicious prosecution a plaintiff must prove that: (1) there must have been a prior institution or continuation of some regular judicial proceedings against the plaintiff in the action for malicious prosecution; (2) the former proceedings must have been by, or at the instance of the defendant in the action for malicious prosecution; (3) the former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution; (4) there must have been malice in instituting the former proceedings; (5) there must have been want of probable cause for the institution of the former proceedings; and (6) there must have been injury or damage

---

**3.** *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979).

**4.** *Windom v. William C. Ungerer, W.C.,* 903 A.2d 276, 280 (Del.2006).

**5.** *Ebersole v. Lowengrub,* 180 A.2d 467, 468 (Del.1962).

**6.** *Pryor v. Aviola,* 301 A.2d 306, 308 (Del.Super.1973).

resulting to the plaintiff from the former proceedings.[7] Furthermore, the tort of malicious prosecution, from a public policy standpoint, is a disfavored cause of action in Delaware because of the Court's desire to provide an open forum for those who wish to prosecute.[8]

Both parties agree that Mr. Quartarone was brought before the judicial process, was found not guilty, and suffered damages. The disputed elements are whether: (1) Kohl's was the initiating party of the underlying criminal action against Quartarone; (2) the shoplifting charge against Quartarone had sufficient probable cause at the inception of the arrest; and (3) whether Kohl's actions throughout these proceedings were done with malice. The most contentious and difficult issue for Quartarone to establish is whether sufficient probable cause was present at the time of his arrest and when his shoplifting trial began.

▆▆▆ The issue of probable cause in the context of malicious prosecution is, simply put, a vexing one. Probable cause is, generally, a criminal law concept which is decided by a court, not the jury. In the criminal law context, it is viewed as a mixed question of law and fact but both the factual and legal disputes are decided by a judge, not a jury.[9] However, as an element of malicious prosecution, the criminal law concept of probable cause is placed within a civil claim. Elements of a tort claim are generally questions of fact which are normally to be resolved by a jury, not a court. Hence, an inherent tension lies between these two legal axioms.

Therefore, before even considering the merits of whether or not probable cause existed here, this Court must first resolve the issue of the respective functions of the jury and the Court when there are questions concerning the element of probable cause found within a malicious prosecution claim. There are three available options. The probable cause determination in a malicious prosecution case can either be: (1) a pure question of law; (2) a pure question of fact; or (3) a hybrid or "mixed" question of law and fact.[10] This Court has reviewed prior case law of Delaware in an attempt to resolve the question. The law, however, presently lacks consistency on the matter. Therefore, this Court finds it necessary to trace the development of the issue as it has appeared before the courts of this state.

The question of respective roles was first addressed by the Delaware Supreme Court in 1842 in the case of *Wells v. Parsons*.[11] The opinion divided the Court, but the majority held that probable cause was "a mixed question of law and fact; the facts to be found by the jury, and the court to decide whether they amount to probable cause."[12] The Court then proceeded to relate the facts of the case, specifically highlighting disputed testimony of an eye-

---

7. *Stidham v. Diamond State Brewery, Inc.*, 21 A.2d 283, 284 (Del.Super.1941).

8. *Id.* at 285. ("The law does not discourage attempts to bring to justice the supposed perpetrators of criminal offenses and does not penalize prosecutors in such cases when they act without malice and upon sufficient and [sic] probable cause."); *Kaye v. Pantone, Inc.*, 395 A.2d 369, 372 (Del.Ch.1978) ("malicious prosecution . . . is viewed with disfavor in the law and is to be carefully guarded against.").

9. *Hunter v. State*, 783 A.2d 558, 561 (Del. 2001).

10. C.C. Marvel, Annotation, *Probable Cause or Want Thereof, in Malicious Prosecution Action, as Question of Law for Court or of Fact for Jury*, 87 A.L.R.2d 183 § 3[a].

11. 3 Del. (3 Harr.) 505 (Del.1842).

12. *Id.*

witness. The Court ruled it was the jury's duty to either find the eye-witness as credible or not.[13] The Court went on to hold that if the jury found the facts as proven, then there was probable cause for the underlying arrest. Therefore, in *Wells*, the court's role was to take the facts as found by the jury and rule on the legal question of probable cause.

Strangely, this precedent was not followed in *Plummer v. Collins*,[14] a 1910 Superior Court case. In that case, the Court fully charged the jury to determine both the facts surrounding the issue of probable cause and also determine whether there was probable cause in the underlying prosecution.[15] In sum, the Court in that case treated the question of probable cause within a claim of malicious prosecution as a pure question of fact for the jury. For whatever reason, *Plummer* failed to follow *Wells*.

In 1941, almost 100 years following the *Wells* decision, the Supreme Court had another opportunity to consider malicious prosecution in *Stidham v. Diamond State Brewery, Inc.*[16] However, in that case the Supreme Court cited no precedent in its opinion. Nor did the Court comment upon whether the issue of probable cause was a question of fact, law or a mixed question of law and fact. Instead, the Court relied heavily on the fact that a Grand Jury had presented a true bill for indictment and noted that such a finding was a prima facie showing of probable cause. Because the Court found no disputed evidence brought forward by the plaintiff to rebut the indictment, the Court determined there was probable cause in the underlying prosecution. Although the Court made its find-

ings without a jury, this Court does not read *Stidham* to stand for the proposition that probable cause is strictly a question of law in Delaware. Instead, the probable cause finding in *Stidham* was achieved because there were no disputed facts on the issue of probable cause. Therefore, this Court finds nothing in *Stidham* that disturbed *Wells*. Indeed, *Stidham* can be read as a logical corollary to the *Wells* decision. When there are no disputed facts, a jury in a "mixed" question jurisdiction is no longer needed and the Court can rule whether probable cause existed in the underlying prosecution.

The next case is *Brown v. Cluley*.[17] In *Brown*, this Court held that allegations of the failure of the complaining witness in the criminal action to provide the magistrate and the Grand Jury with all of the facts and circumstances known to that witness at the time preceding the prosecution was sufficient to withstand a motion to dismiss brought forward by the defendant in the civil case. The Court did not need to consider the role of the jury and the court in the probable cause analysis. However, for the importance of tracking case law of this issue, the *Brown* opinion directly cited to *Plummer* where the Court had charged the jury as both the finder of fact and law regarding the issue of probable cause. In sum, the *Brown* opinion carried forward the language in *Plummer* suggesting that Delaware allowed the jury to both determine the factual and legal questions of probable cause, contrary to the Supreme Court's ruling in *Wells*.

Finally, in the relatively more recent case of *Wilson v. Draper–King Cole, Inc.*, this Court considered a summary judg-

---

**13.** *Id.*

**14.** *Plummer v. Collins*, 77 A. 750 (Del.Super.1910).

**15.** *Id.* at 752.

**16.** 21 A.2d 283 (Del.Super.1941).

**17.** 179 A.2d 93 (Del.Super.1962)

ment motion involving malicious prosecution.[18] In the *Wilson* opinion, the *Wells* case was cited as authority for the proposition that probable cause is a mixed question of law and fact and *Stidham* as authority for the Court to rule when there are no disputed facts.[19] However, after citing to *Wells,* the Court's opinion also cited to the *Plummer* case of 1910, but with an explanatory "compare" signal.[20] The Court's opinion did not articulate the reasoning for this signal, only noting it in the parenthetical following the signal: "jury charge".[21] It is this Court's interpretation that the *Wilson* opinion recognized the apparent tension between jury charge that was employed in *Plummer* and the precedent of *Wells;* however, the *Wilson* opinion chose not to expound upon the apparent conflict and was able to settle the immediate issue before it.

It is unfortunate that the *Wilson* opinion did not further flesh out the apparent contradiction between *Plummer* and *Wells* because such an opinion might have helped in the fashioning of this Court's civil pattern jury instruction. Instead, the current civil pattern instruction for malicious prosecution in this Court reads:

### Probable Cause—Matter of Law

[I have ruled as a matter of law/ It has been stipulated] that probable cause did not exist when the changes were brought against [*plaintiff's name*] by [*defendant's name*]. In your deliberations you need consider only whether [*plaintiff's name*] has proved [describe the remaining elements in dispute].

### Probable Cause—Question of Fact For the Jury

You must determine whether probable cause existed to support [*defendant's name*]'s charge or claim against [*plaintiff's name*]. Probable cause means that there is a reasonable basis within the facts and circumstances when the charge or claim was made to believe that a crime or a tort had been committed.[22]

A reading of the instructions gives the impression that if probable cause is not either (1) agreed upon by both parties or (2) has been ruled upon as a matter of law then the jury becomes both the finder of fact and the deciding entity of the legal issue of whether probable cause existed in the underlying prosecution. These pattern instructions, it appears, were drafted under the influence of the *Plummer* decision and/or any of its progeny. Indeed, they cite to the *Brown* case. These instructions, however, do not comport with the *Wells* decision. Consequently, this Court questions the validity of the currently drafted instruction "Probable Cause—Question of Fact for the Jury".

The point of this rather lengthy foray into case law history has been in attempt to determine the exact roles of jury and court on the question of probable cause in malicious prosecution cases. As already highlighted, there has been confusion, arguably inconsistency, within the case law which has carried over into the pattern instructions. This may be a result of the small number of malicious prosecution cases. For whatever reason, it is this Court's opinion that the rule laid down in *Wells* dating back to 1842 remains the precedent case on this matter.

18. *Wilson v. Draper–King Cole, Inc.,* 1986 WL 3638 (Del.Super.Mar. 7, 1986).

19. *Id.* at *4.

20. *Id.*

21. *Id.*

22. Pattern Jury Instruction § 12.3.

■ After a careful analysis of these cases, this Court is satisfied that the question of whether there was sufficient probable cause for the prosecution of a plaintiff in a malicious prosecution claim is a mixed question of law and fact.[23] It is "mixed" because probable cause, while ultimately determined by the Court, is a test based on facts and circumstances that are resolved by a jury determination when there are disputed facts. Accordingly, when the jury settles disputed facts, the Court may proceed and make its probable cause finding. If, on the other hand, facts are not in dispute, then the Court determines probable cause without the jury.[24]

■ Having resolved the issue of how and who determines probable cause, the Court now considers the analytical standards employed when considering probable cause within a malicious prosecution case. First, the probable cause determination within the context of the tort of malicious prosecution is viewed at the "time of the inception of the original proceedings."[25] As in criminal cases, probable cause within the tort of malicious prosecution is based on "the totality of the circumstances through a case by case review of 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"[26] Furthermore, the possibility of innocent explanations for the facts and circumstances at the time of the arrest in question does not extinguish the possibility of a probable cause finding.[27] Although probable cause cannot be simplified with any mathematical precision, probable cause "lies somewhere between suspicion and sufficient evidence to convict."[28] Lastly, even though the plaintiff in the underlying criminal prosecution may have received a favorable outcome (nolle prosequi or a judgment of not guilty), that fact is not determinative on the question of probable cause when it is re-examined during the malicious prosecution claim.[29]

■ Turning to the events here, the Court must first examine whether any issues of material fact which are relevant to the probable cause analysis exist. Quartarone conceded at oral argument that Kohl's had probable cause (a concession made in the face of reality) to detain him at the point he left the store. The Court's factual investigation, then, focuses narrowly on the forty minutes in the security room in which Quartarone was held until he was taken by the police. If the Court finds there to be no factual dispute relating to the events within the security room, the Court can proceed with a probable cause ruling at summary judgment.[30] Furthermore, because it is not disputed that probable cause did exist when Quartarone was originally detained by Twisler and Markson, the question of law is also a narrow one. Because probable cause existed prior to Quartarone's detention, the question is whether the events in the security room were sufficient enough to negate Kohl's belief of probable cause.

23. *Wilson* at *4 (citing *Wells v. Parsons*, 3 Del. (3 Harr.) 505 (1842)).

24. *Id.* (citing *Stidham*).

25. *Stidham* at 285.

26. *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 544 (1983)).

27. *Id.* at 930.

28. *Id.* at 929 (quoting *Hovington v. State*, 616 A.2d 829, 833 (Del.1992)).

29. *Stidham* at 285.

30. *Id.*

The Court has read the entire criminal trial transcript in order to find any material factual dispute that is relevant to the probable cause issue. It has found none on that issue. The Court acknowledges there were factual conflicts at trial over some non-germane events in the loss prevention office. There was conflicting testimony, for instance, between Twisler, Markson, and Quartarone revolving around whether or not Mr. Quartarone became less cooperative as he was held. Mario, Quartarone's son, became agitated. Quartarone admitted to his displeasure in the proceedings and asked for police assistance. These actions may have been characterized by Twisler and Markson as "non-cooperative". Both accounts agree, however, that the situation was a contentious one. Therefore, the dispute is largely semantical.

In essence, the different viewpoints between the Quartarone and Kohl's is not based upon the facts that occurred within the office, but the "reasonable" conclusions that an average person should have drawn from the facts. Quartarone views his responses and explanations as sufficient enough, in and of themselves, to remove any probable cause that may have existed at the time he was stopped at the exit. There is no dispute that Quartarone explained the occurrence as a mistake, that he forgot to pay, he was a federal officer, he offered to pay for the shoes, worked for two radio stations, and that he paid by a $171 check for the other merchandise. Kohl's relies on the initial facts before Quartarone was escorted to the security room.

The critical issue in this case is whether Quartarone's various innocent explanations are sufficient to undercut and extinguish whatever "probable cause" existed at the point he was stopped by store employees. Stated another way, must potentially incriminating facts and the reasonable conclusions drawn from those facts yield to potentially exculpatory information as a matter of law when there is a probable cause question? The Court finds, after reviewing established probable cause principles of law, that the question must be answered in the negative in this particular case.

"Probable cause is an elusive concept which avoids precise definition"[31] that "lies somewhere between suspicion and evidence sufficient to convict."[32] The information available to the police need not even be more likely true than not.[33] Finally, the possibility of hypothetically innocent explanation for several facts revealed during an investigation does not preclude a determination that probable cause exists for an arrest.[34]

Of course, these are all precepts used in criminal cases. However, if the civil action for malicious prosecution is to be intellectually and logically consistent with the principles of probable cause utilized in criminal cases, the legal principles of probable cause in the criminal context should apply with equal force in the civil context barring extraordinary reasons. Therefore, after taking into consideration the facts, this Court finds there was sufficient probable cause for Kohl's to suspect Quartarone of shoplifting despite his innocent explanations. Simply put, Quartarone is asking this Court to rule that probable

---

**31.** *State v. Cochran,* 372 A.2d 193, 195 (Del. 1977).

**32.** *Maxwell,* 624 A.2d at 929 (quoting *Hovington v. State,* 616 A.2d 829, 833 (Del.1992)).

**33.** *Jarvis v. State,* 600 A.2d 38, 43 (Del.1991).

**34.** *Maxwell,* 624 A.2d at 930 (Del.1993); *Jarvis,* 600 A.2d 38, 41–2 (Del.1991).

cause did not exist at the time he was arrested because he had offered innocent and allegedly reasonable explanations for his behavior. However, the facts of the video footage of Quartarone's behavior and the fact that the shoes were not purchased do not lose their weight or importance during the Court's probable cause analysis.

The Court finds both parties' interpretations of the events to be reasonable. Clearly, the admission of mistake by Quartarone is reasonable. However, the testimony of Twisler and Markson is also reasonable. The two had a combined experience of seven years in loss management. They testified to their experiences in having dealt with customers who offered to pay after being stopped by loss management employees. They also stated some shoplifters will attempt to steal by paying only part of the bill while trying to walk away with other merchandise. They pointed out parts of the video surveillance which they characterized as concealment or an attempt to hide the old shoes. Although this Court has not seen that footage,[35] it was convincing enough for the judge in the lower court for him to deny the motion of acquittal submitted by Quartarone. Finally, Quartarone failed to pay for the shoes at the cashier.

The key to this discussion on probable cause is not which interpretation is "right" or "wrong". The only issue the Court needs to consider is whether Kohl's, given what they knew at that moment, acted reasonably to initiate shoplifting proceedings against Quartarone. While the expla-

nations offered by Quartarone are reasonable, this Court also finds Kohl's *viewpoint* an equally reasonable explanation of the facts. Kohl's initiated the prosecution. They stopped Quartarone, then held him until the State Police arrived. It was their recitation of the incident which caused Quartarone to be arrested and they continued with the prosecution in the Court of Common Pleas even after knowing Quartarone's explanations.

 Because the Court has determined that Kohl's had probable cause to have Quartarone arrested for shoplifting, the remaining issue of malice is moot. Malice in a malicious prosecution claim is only considered when there is a lack of probable cause, but it is not when there was probable cause.[36] In other words, the existence of probable cause trumps any consideration of malice, even if malice were present.

### Conclusion

Because this Court finds that there was probable cause in the underlying criminal action, Quartarone's malicious prosecution claim fails to state a ground upon which relief can be granted. Accordingly, Kohl's motion for summary judgment seeking to dismiss the claim of malicious prosecution is **GRANTED**.

---

**35.** Much of Markson's testimony was his description of the events on the video while it was being played in front of the judge.

**36.** *Wells,* 3 Harr. 505.