CHRISTIE, Justice:
 

 Defendants appeal their convictions for robbery first degree (11
 
 Del. C.
 
 § 832), conspiracy second degree (11
 
 Del.C.
 
 § 512), and burglary second degree (11
 
 Del.C.
 
 § 825), which were based on a jury verdict in Superior Court, New Castle County. Defendants have presented various arguments, but we conclude that none of the alleged errors requires reversal of the convictions. We will address only those arguments which are deemed to be worthy of discussion.
 

 I
 

 The victim of the alleged crimes testified that she was at home alone on March 15, 1983, watching television. At about 11:15 p.m. she heard a noise and went to the back door to investigate. As she attempted to turn on a light by the door, the glass from the window frame just above her head crashed down upon her. Two clasped hands came through the window. A voice said, “Hold it right there.” She testified that she believed that the person who had broken the window was holding a gun between his hands.
 

 
 *1223
 
 The intruders forced the door open and pushed the victim into a corner, against a wall. One of the intruders then snatched off the victim’s glasses and instructed her to turn her eyes towards the wall. By this time the victim had determined that four persons had entered her home.
 

 During the next 15-20 minutes the victim heard the intruders rummage through her home, opening and closing doors and drawers, and going up and down the stairs. Responding to an inquiry by one of these individuals, the victim told the intruders where her money was kept. Eight dollars were taken from her purse. The only other property missing was two cartons of Winston cigarettes. When the intruders departed, the victim attempted to call the police, but her telephone wires had been cut. She then dressed and went to a neighbor’s house to call the police.
 

 The victim was an elderly individual and her vision was limited. She was unable to identify the persons who entered her home and could provide the police with only general descriptions of the intruders. She stated that one person had a ski mask over his face and wore a plaid, flannel shirt. The other three wore dark clothing and two of the three had dark hats with brims.
 

 During her discussions with the police, the victim offered the name of Larry Sines as a possible suspect because he had done work on her home in the past.
 

 An alleged co-participant in this offense, Hansel “George” Williams, was living with his girl friend (hereinafter referred to as “girl friend”) at the time this offense was committed. The girl friend knew defendants Larry Sines and Joseph Williams, as well as the remaining co-conspirator (who is also a third Williams brother). It was through the testimony of this girl friend that the State was finally able to establish a connection between the crimes and the defendants.
 

 According to the girl friend’s testimony, she was at home on March 15, 1983 with George and Stanley Williams, when the defendants Sines and Joseph Williams arrived. Sines told the others that, “We have a job to do.” One of the conspirators stated that an old lady who lived on Porter Road was expecting a social security check and that they intended to get it. George Williams initially declined to get involved in the scheme but, he later relented and agreed to go along. In the meantime the other three men discussed their plans for the robbery.
 

 Stanley Williams then told his thirteen year old nephew to go into the kitchen and get the gun from the top of the refrigerator. The nephew complied and gave the gun to Stanley Williams. The four conspirators then searched for masks, gloves, hats and similar articles of clothing to cover their faces and hands. In particular, the girl friend remembered that one individual left with a ski mask and another had a hat with a small brim around the front. She did not remember exactly what time the conspirators left, except that it was after dark. As they departed she asked George Williams to get her a pack of cigarettes.
 

 The girl friend stated that she watched television and slept while the four individuals were gone. She was not sure exactly when they returned but she described them as “bragging, excited, and happy” when they arrived. George Williams gave her a pack of Winston cigarettes, despite the fact that neither she nor any of the other individuals present smoked that particular brand. When she asked why that particular brand was chosen, George Williams explained that the store was out of Marlboro cigarettes.
 

 About one month after the alleged robbery the girl friend indicated that she was beaten by her boy friend, George Williams, brother of defendant Joseph Williams. It was when she reported the alleged assault that she also informed the police that she knew who had committed the crimes which occurred on March 15, 1983 at the victim’s residence.
 

 At trial the girl friend was cross-examined extensively by counsel for each de
 
 *1224
 
 fendant as to her reasons for reporting her knowledge of the March 15 incident to the police and for testifying. She was also examined as to statements which she had previously made. By the time of this trial, she had already testified at the trial of Stanley Williams in January, 1984, the mistrial of defendants Sines and Joseph Williams in November of 1983, and the trial of George Williams in October, 1983. She also had testified in a Pennsylvania extradition hearing in August, 1983 and had given a recorded statement to the police in April of 1983.
 

 The cross-examination exposed inconsistencies between girl friend’s testimony in this case and that which she had previously proffered on other occasions. In particular, the girl friend gave conflicting and confused testimony as to where she was located while the conspirators planned the robbery, and as to the time the men returned on the evening in question. She also admitted that she had previously lied as to the involvement of Williams’ nephew so as to protect him from any possible recriminations.
 

 Defendants relied on the defense of alibi. A neighbor who periodically worked at a local truck stop testified that she knew defendant Sines, and that he and two others were at the truck stop from 10:30 p.m. to approximately 11:20 p.m. on the evening in question.
 

 After hearing all the evidence the jury convicted the two defendants on the counts charged in the indictment.
 

 Defendants have focused their contentions on appeal on factual and credibility issues which, while also involving some legal points, generally fall within the province of the jury and the trial court. The jury heard the evidence and weighed the credibility of the witnesses. There is credible evidence in the record to support the verdicts. The trial judge made no errors and committed no abuse of discretion in any of his rulings. We affirm the convictions.
 

 II
 

 Defendants initially contend that the prosecutor, in his closing summation to the jury, improperly referred to matters which were not in evidence. They assert that the jury was misled as a result, and that the substantial rights of the defendants were prejudicially affected.
 

 This issue centers around the girl friend’s confusion as to precisely when the defendants returned to the Williams’ home. The girl friend testified in this trial that she didn’t know when the defendants returned with the cigarettes. However, defendants introduced transcripts, indicating that on two prior occasions the girl friend had testified that the defendants returned with the cigarettes by 9:00 p.m. In so doing, the defendants attacked an apparent inconsistency in the State’s case. If the crime had occurred at 11:15 p.m. (as the victim indicated), and the cigarettes were part of the fruits of that crime, then the girl friend could not have received those cigarettes by 9:00 p.m.
 

 The prosecutor sought to bolster this witness’ credibility in the following statement in his summation to the jury:
 

 Prosecutor: Stephanie Taylor has not said consistently on those six different occasions when she has had to tell someone about it that it was always before 9 o’clock. Don’t you think that if she had said it six times consistently, there would be six ...
 

 Defense Counsel: Excuse me, Your Hon- or. That’s not in evidence. The other times that she testified are not in evidence.
 

 The possible implication of such a statement was that on other occasions the girl friend had testified in a manner which was entirely consistent with the State’s theory of the timing of the events on March 15, 1983. Because such prior statements had not been placed into evidence, such references were improper, and, in fact, her prior statements were not consistent with the State’s theories.
 

 
 *1225
 
 Not every improper remark by a prosecutor calls for reversal. Only those which prejudicially affect the accused's substantial rights to a fair trial require reversal.
 
 Edwards v. State,
 
 Del.Supr., 320 A.2d 701, 703 (1974);
 
 Sexton v. State,
 
 Del. Supr., 397 A.2d 540, 544 (1979). There is nothing in the record to support defendants’ contention that this reference, in and of itself, substantially prejudiced the defendants. The witness had testified during the trial that she was unsure as to precisely when the defendants returned. Defense counsel had already made substantial use of her prior testimony, where on two prior occasions she had testified that the time of return was about 9:00 p.m. The State’s indirect attempt to rehabilitate her credibility was an error but the import of the statement, suggesting that the girl friend had testified to a later time on prior occasions, was relatively innocuous. Furthermore, although the prior statements referred to had not been introduced into evidence, they had been referred to by the attorneys throughout the trial. We hold that the inappropriate statements amounted to harmless error under the circumstances of this case.
 

 Ill
 

 The girl friend was allowed to testify, over defendants’ objection, that defendant Sines had mouthed a threat to her during a court recess. Sines later denied that he had made a threat. Defendant asserts that the prejudicial effect of such testimony substantially outweighed its probative value and that its admission requires reversal by this Court.
 

 D.R.E. 403 states that:
 

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.
 

 The determination of whether the probative value of a particular piece of evidence is substantially outweighed by the danger of unfair prejudice is a matter which falls particularly within the discretion of the trial judge, who has the firsthand opportunity to evaluate relevant factors.
 
 Rush v. State,
 
 Del.Supr., 491 A.2d 439 (1985). There is no doubt that the defendant’s alleged threat to the girl friend is relevant.
 
 See State v. Sorbo,
 
 Conn. Supr., 174 Conn. 253, 386 A.2d 221, 223 (1978);
 
 Goldsmith v. State,
 
 Del.Supr., 405 A.2d 109, 114 (1979). Such evidence necessarily involves prejudice to the accused. Here, the trial judge entertained a
 
 voir dire
 
 examination of the witness, outside of the presence of the jury, during which she was subjected to direct and cross-examination. The judge heard arguments by counsel. Only after considering the evidence and the arguments did the judge decide to admit the evidence. We conclude that there was no abuse of discretion.
 

 IV
 

 Defendants assert that the trial judge erred when he denied defendants’ request for an instruction on the lesser included offenses of robbery in the second degree and misdemeanor theft. The jury was instructed only on the crimes charged in the indictment: robbery first degree, burglary second degree, and conspiracy third degree.
 

 The pertinent provision in the Delaware Code states that:
 

 The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. 11
 
 Del.C.
 
 § 206(c)
 

 Applying the law to this case we find no facts which would support the defendants’ proposed instructions. Only the victim testified as to what occurred in her home. She stated that the defendants pos
 
 *1226
 
 sessed what appeared to be a gun.
 
 [1]
 
 (This testimony was corroborated to some extent by the girl friend's statements concerning defendant’s possession of a gun.) The victim’s testimony as to the crimes committed was not contradicted by the defendants, who relied on the alibi defense. As a result, evidence proffered by the State supported only convictions of the offenses actually charged, whereas the defense testimony, if believed, would have led to an acquittal. In this case there was no reasonable basis for the jury to conclude that the State had failed to prove the crimes charged but had proved lesser included crimes. Jury instructions on the proposed lesser included offenses would have been inappropriate under these circumstances. We affirm the trial judge’s ruling.
 

 V
 

 The defendants contend that the trial court abused its discretion in permitting inadmissible hearsay to go into evidence. The particular statement to which defendants have objected was presented to the trial court in the following context:
 

 State: Could you describe the demeanor, how they were acting when they came in?
 

 Witness: They were bragging, excited, happy.
 

 Prior to admitting this testimony the court heard argument from defense counsel, who asserted that any statements the alleged conspirators may have made upon their return to the Williams’ home, would be inadmissible hearsay because, if there was a conspiracy, it had terminated by then. The State argued that such statements were still made “in furtherance of the conspiracy.”
 
 See
 
 D.R.E. 801(d)(2)(E). The court found the State’s position to be more persuasive, especially in light of the testimony tending to indicate that the proceeds of the robbery were distributed at this time. We find no abuse of discretion in the ruling of the trial court.
 

 We note that the only testimony concerning the conspirators’ post-crime discussions was made in response to a question pertaining to the demeanor of the conspirators. Although the testimony as to “bragging” may not have been directly responsive to that question, nevertheless, it is fair to conclude that the observation offered by the witness was not offered to prove the truth of any statements made by a conspirator. Therefore, even if the testimony is considered to be a “statement” (as that term is defined in D.R.E. 801(a)), such testimony need not be regarded as inadmissible hearsay.
 

 VI
 

 The defendants contend that their rights to a fair trial were prejudiced by the prosecutor’s inadvertent reference to prior “trials”. They assert that the reference to “trials” instead of “proceedings” led jurors to infer that the other conspirators had been previously tried and convicted, thereby irreparably prejudicing these defendants. This argument is without merit. The fact that there have been prior trials (relating to this incident) does not lead to the conclusion that such trials ended in convictions. Such prior trials could have resulted in mistrials or acquittals. Under the circumstances, references to prior trials are not deemed to have been prejudicial to the defendants.
 

 VII
 

 The defendants next contend that a prosecution witness’ violation of a sequestration order was so prejudicial to defendants that it warrants reversal by this Court. It appears that during a recess, the prosecutor and a State detective discussed a witness’ testimony (while she was still testifying) with the witness for a brief period. While such conduct by the prosecutor
 
 *1227
 
 and detective is improper, defendants have presented nothing indicating that they were in any way prejudiced by this brief indiscretion. Absent a showing of actual prejudice, a violation of a sequestration order will not constitute reversible error.
 
 See Fountain v. State,
 
 Del.Supr., 382 A.2d 230, 231 (1977).
 

 VIII
 

 The defendants complain that actions by jurors compromised the integrity of the trial and so prejudiced defendants as to require a reversal of the convictions. Two occurrences have been called to this Court’s attention.
 

 First, during the course of the trial, defendants produced an affidavit of a coworker of an alternate juror, then serving on the jury panel, which indicated that this alternate juror had improperly discussed the case. The alternate juror allegedly stated that one of the State’s witnesses appeared confused by the attorneys. When asked if she thought the defendants were guilty, the juror responded that they “look like they did it”. The trial judge questioned this juror in chambers, in the presence of counsel. In response to defendants’ motion for mistrial or, the alternative, to remove the alternate juror from the panel, the court denied the former and reserved decision on the latter motion. At the close of the testimony the alternate juror in question was excused and took no part in juror deliberations.
 

 Determinations of juror impartiality are the responsibility of the trial judge who has the opportunity to question the juror, observe his or her demeanor, and evaluate the ability of the juror to render a fair verdict.
 
 Hughes v. State,
 
 Del.Supr., 490 A.2d 1034 (1985). Such decisions will not be overturned without a showing of a prejudicial abuse of discretion by the Court.
 
 See Styler v. State,
 
 Del.Supr., 417 A.2d 948, 953 (1980).
 

 As it turned out, the alternate juror was excused prior to deliberations. We find no prejudice to the defendants in the trial court’s ruling and no abuse of discretion.
 

 The second incident complained of involved an even more remote occurrence. At the conclusion of an earlier trial of one of the other alleged conspirators (Stanley Williams), a State detective approached an alternate juror and asked that juror his impression of the case. The juror replied that he had “a favorable impression” of the case and the two spoke for several minutes. The fact that these actions had taken place prompted defense counsel for Sines to move that the court dismiss the charges in this case against that defendant or, in the alternative, that the court disqualify the State detective from testifying.
 

 Defense counsel argued that the detective now had the opportunity to tailor his testimony according to the discussions with the alternate juror and that by virtue of the juror’s statements, the State had been reassured that they should proceed with the same evidence used at the prior trial. Although the detective’s conduct was inappropriate, it did not entitle the defendants in this case to any of the remedies sought.
 

 * * * * *
 

 The issues discussed above and other issues raised by defendants but not specifically discussed, taken singly or collectively, are not such as to entitle defendants to a reversal of their convictions. The judgments of the Superior Court are
 

 AFFIRMED.
 

 [1]
 

 . Such a subjective belief on the part of the victim is all that is necessary to satisfy a conviction of robbery first degree.
 
 See
 
 11
 
 Del.C.
 
 § 832;
 
 Harrigan v. State,
 
 Del.Supr., 447 A.2d 1191, 1193 (1982).