Larry WARD, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: April 17, 1990.
Decided: May 31, 1990.
Rehearing Denied June 26, 1990.

Brian J. Bartley and Raymond J. Otlowski, Asst. Public Defenders, Office of Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before MOORE, WALSH and HOLLAND, JJ.

WALSH, Justice:

The defendant, Larry Ward ("Ward"), was charged with Attempted Murder in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. Following a jury trial in the Superior Court, Ward was convicted of both charges and sentenced to life imprisonment. On appeal, Ward raises two challenges to the fairness of the Superior Court proceedings. First, he argues that the trial court should have instructed the jury on the elements of Attempted Assault, First and Second Degree, and Reckless Endangering, First and Second Degree, as lesser included offenses. Second, he contends that the court erred in admitting certain physical evidence—a pistol and ammunition—found at the crime scene. Although we question the reasoning adopted by the trial court in declining to give the requested jury instructions, we find that the decision not to give the instructions was ultimately correct. Moreover, we find no merit in Ward's evidentiary argument. Accordingly, we affirm his conviction.

I

On October 24, 1988, several police officers responded to a complaint of disorderly conduct occurring in the 800 block of Vandever Avenue in Wilmington. The complaint stemmed from an altercation between Ward and an individual named Freddie Smiley, which apparently ended when Ward fired a pistol and Smiley fled. When police arrived on the scene, several witnesses stated that Ward was responsible for the incident and that he was standing several yards away, at the corner of Vandever Avenue and Church Street. Looking up the street, the officers saw an individual wearing a dark blue jacket, tan trousers, and dark shoes. Officer Baylor called to the individual, who then took flight; Officers Saunders, Conner, and Baylor ran after him. As the officers closed to a distance of about twenty feet, the suspect took a gun from his pocket, turned to face the officers, extended his arm, and fired one shot. The officers took cover, but observed their quarry ducking into an alley-

way. They radioed for support and then continued their pursuit.

In response to the call for assistance, Sergeant Lane approached the alleyway from the opposite end and observed Ward emerge from the alley. Ward was wearing a blue jacket and tan trousers, and although he was walking, he was sweating profusely and breathing heavily. Sergeant Lane stopped Ward for questioning and Officer Saunders subsequently identified Ward as the gunman.

After Ward was taken into custody, the police searched the area. They found a .25 caliber bullet casing in the area where the shot had been fired. In a back lot touching the alleyway, they found a magazine containing .25 caliber ammunition. Finally, in a trash can in the alley, they found a .25 caliber pistol, a .25 caliber bullet, and a pack of cigarettes that contained twelve small bags of cocaine.

At trial, Ward claimed to be the victim of mistaken identity, alleging that he was merely passing through the area when arrested and that he had nothing to do with the shooting. Nevertheless, his attorney asked the trial judge to instruct the jury on the definitions of Attempted Assault, First and Second Degree, and Reckless Endangering, First and Second Degree. The court refused, ruling that none of the crimes for which instructions were sought were lesser offenses included within the definition of Attempted Murder. The court concluded that although the four crimes in question may have an "inherent relationship" to attempted murder, the definitions of the four crimes require proof of elements that are distinct from the elements of attempted murder. Since the State never set out to prove these distinct elements, the court ruled that Ward could not be convicted of these crimes, but only of the crimes for which he had been indicted.

## II

■ A defendant may be convicted of a crime for which he has not been indicted if all of the elements of that crime are included in the definition of the crime with which he has been charged. 11 *Del.C.* § 206(b);

*Mackie v. State*, Del.Supr., 384 A.2d 625, 627 (1978). However, the jury must be instructed on the definition of crimes not charged in the indictment only if they are truly lesser included offenses. Thus, if the definition of a lesser crime requires proof of an element not required for proof of the crime for which the defendant has been indicted, no instruction need be given.

■ We find that the four crimes concerning which Ward sought instructions are lesser offenses included within the definition of attempted murder. Murder in the First Degree is defined as, *inter alia*, "intentionally caus[ing] the death of another person." 11 *Del.C.* § 636(a)(1). Assault in the First Degree is defined as, *inter alia*, "intentionally caus[ing] serious physical injury to another person by means of a deadly weapon or a dangerous instrument," 11 *Del.C.* § 613(1), while Assault in the Second Degree is defined as, *inter alia*, "intentionally caus[ing] physical injury to another person by means of a deadly weapon or dangerous instrument." 11 *Del.C.* § 612(2). We do not see how a defendant can intend to kill and attempt to do so without also intentionally attempting to inflict physical injury and serious physical injury.

Reckless Endangering in the First Degree is defined as "recklessly engag[ing] in conduct which creates a substantial risk of death to another person," 11 *Del.C.* § 604, while Reckless Endangering in the Second Degree is defined as "recklessly engag[ing] in conduct which creates a substantial risk of physical injury to another person." 11 *Del.C.* § 603. When an individual intentionally attempts to kill, he is necessarily creating a substantial risk of death and physical injury. Moreover, recklessness is a less culpable state of mind than that required to form intent. 11 *Del.C.* § 231. Therefore reckless behavior is subsumed within intentional behavior: "When recklessness suffices to establish an element of the offense, the element also is established if a person acts intentionally...." 11 *Del.C.* § 253. It follows that, conceptually at least, a defendant cannot commit at-

tempted murder without also satisfying all of the elements of reckless endangering.

■ Thus, we must conclude that the trial court erred in ruling that the four crimes for which instructions were requested are not lesser offenses included in attempted murder.[1] However, the need to instruct the jury on the definitions of such crimes does not turn solely on the narrow question of whether they are, in fact, lesser included offenses. Rather, the court must instruct the jury only if "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offenses." 11 *Del.C.* § 206(c). In short, it is not enough that a defendant could be convicted of a lesser charge if he had been indicted for it; rather, the evidence introduced in the case must support a jury verdict convicting the defendant of the lesser crime *rather than* the indicted crime. *Williams v. State*, Del.Supr., 494 A.2d 1237, 1241–42 (1985); *Matthews v. State*, Del.Supr., 310 A.2d 645, 646 (1973).

In this case, Ward argued that he was in the area of the shooting by coincidence and that he had nothing to do with the incident. Thus, if the jury had believed his defense, they could not have convicted him of any crime. On the other hand, the police identified Ward as the gunman and testified that he deliberately turned, faced his pursuers, and fired a shot at them from a distance of about twenty feet. As was noted in *Winborne v. State*, Del.Supr., 455 A.2d 357, 360 (1982), "[i]n determining the defendant's intention to kill, the finder of fact may infer ... that the actor intended the probable and natural consequences of his act." Thus, the police testimony is consistent with the conclusion that Ward intended to kill; there is, however, no evidence to support the conclusion that Ward intended only to injure or to frighten his pursuers.

Ward relies heavily upon *Oney v. State*, Del.Supr., 397 A.2d 1374 (1979). In that case, a passenger in one car fired a shotgun in the general direction of another car. The gunman and the driver were charged with Reckless Endangering in the First Degree, and the issue presented on appeal was whether they were entitled to an instruction on Reckless Endangering in the Second Degree. The gunman admitted firing the gun, but there was no evidence that he took deliberate aim at the car or anyone in it. Thus, the only question was whether his behavior created a substantial risk of death or only of physical injury. Because the evidence supported either conclusion, the Court held that the defendant was entitled to an instruction on the lesser offense.

In this case, however, there is no basis for concluding that Ward was guilty only of a lesser offense. To accept Ward's position, we would have to conclude that all testimony presented at trial was false. First, we would have to reject Ward's insistence that he was not the person who shot at the police. Second, we would have to conclude that although the police correctly identified Ward as the gunman, they misapprehended the nature of his actions. Thus, Ward is asking us to place the jury in a position where they are free to disregard all evidence presented at trial. It is clear that this argument is legally untenable. As a result, although we disagree with the trial court's reasoning, we find that it was wholly justified in declining to give the instructions that Ward requested.

### III

■ Ward also contends that the bullet casing, ammunition, and gun that the police found should not have been admitted into evidence. He argues that there was no link established between him and the evidence and that the evidence was unfairly prejudicial and might tend to confuse the jury. Ward's argument is based on a flawed understanding of the standard for

---

1. We recognize that the trial court relied, in part, upon this Court's original opinion in *Naylor v. State*, Del.Supr., No. 85, 1987, Christie, C.J. (Apr. 5, 1988). However, at the time of the trial court's ruling, that opinion had been withdrawn and replaced by an order that achieved the same result upon different grounds. *Naylor v. State*, Del.Supr., No. 85, 1987 [551 A.2d 825 (table)], Christie, C.J. (Nov. 2, 1988) (ORDER). That order is fully in accord with our ruling in this case.

admissibility under Delaware Rules of Evidence 401 and 402. The State was not required to establish a conclusive link between Ward and the weaponry. Rather, evidence is admissible if it has any probative value. The fact that the gun and ammunition were found on the route along which Ward fled leads to the permissible inference that Ward discarded them after he fired the shot. The fact that the evidence could not be linked conclusively to Ward diminishes the weight of the evidence, but it hardly renders it irrelevant under Rules 401 and 402. *Payne v. State*, Del.Supr., 367 A.2d 1010, 1017 (1976). Requiring a jury to evaluate the weight of evidence cannot be characterized as confusing the jury. Moreover, the sight of a weapon is not unfairly prejudicial if there is a palpable (albeit inconclusive) link between the weapon and the defendant.

Ward also attacks the admissibility of certain testimony concerning the cocaine found along with the gun. Ward is not in a position to raise this challenge since the testimony was elicited by the defense on cross-examination. Moreover, the cocaine was not admitted into evidence and the State made no effort to link Ward to the cocaine.

In conclusion, we find that Attempted Assault, First and Second Degree, and Reckless Endangering, First and Second Degree, are lesser offenses included within the definition of Attempted Murder. However, because there was no evidentiary basis for convicting Ward of these offenses rather than acquitting or convicting him of attempted murder, the trial court did not err in refusing to instruct the jury as Ward requested. Moreover, the evidence that Ward challenges was properly admitted. The convictions are AFFIRMED.