IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VALERIE CAUFFMAN, | § | |
| | § | No. 168, 2014 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and for |
| STATE OF DELAWARE, | § | New Castle County |
| | § | |
| Plaintiff Below, | § | Cr. I.D. No. 1306018911 |
| Appellee. | § | |

Submitted: January 14, 2015
Decided: January 28, 2015

Before **HOLLAND**, **RIDGELY** and **VALIHURA**, Justices.

### **O R D E R**

This 28th day of January 2015, upon consideration of the briefs of the parties and the record below, it appears to the Court that:

(1) Defendant-Below, Appellant Valerie Cauffman ("Cauffman") was indicted and charged with Assault in the Second Degree[1] and felony Resisting Arrest[2] on August 5, 2013. Trial was held on March 25 and 26, 2013. At the conclusion of the State's case, Cauffman requested that the jury be instructed on a lesser included offense of misdemeanor Resisting Arrest.[3] The trial court denied

---

[1] 11 *Del. C.* § 612.

[2] 11 *Del. C.* § 1257(a).

[3] 11 *Del. C.* § 1257(b).

that request. The jury ultimately found Cauffman guilty of Assault in the Third Degree[4] -- a lesser included offense of Assault in the Second Degree -- and felony Resisting Arrest. Cauffman was sentenced to one year at Level V incarceration, suspended for one year at Level II probation for Assault; and one year at Level V incarceration, suspended for one year at Level II probation to run concurrently for Resisting Arrest. On appeal, Cauffman argues that the Superior Court erred by refusing to give a requested jury instruction for the lesser included offense of misdemeanor Resisting Arrest. We disagree and affirm.

(2) On June 20, 2013, between 11:30 p.m. and midnight, Cauffman called the police to report that her fiancé, John White ("White"), was "acting crazy, yelling, and intoxicated" in their Lancaster Village home. Officer Sexton ("Sexton"), Officer Andrea Hall ("Hall"), Officer Laws ("Laws"), Officer Phillips ("Phillips"), and Lieutenant Travis McDermott ("McDermott") responded to Cauffman's call. When the officers arrived at the home, the lights went off, and all movement and noise in the house stopped. The officers continued to knock on the door of the residence. Shortly thereafter a male voice yelled, "you're not coming in and I'm not coming out without a warrant."

(3) After approximately five minutes, Cauffman exited the house to speak with the officers. Initially, Cauffman was cooperative and agreed to let the officers

---

[4] 11 *Del. C.* § 611.

in the house. But Cauffman's demeanor changed when she discovered that her fiancé had a capias out for his arrest. As a result, she refused to let the officers in the house. Cauffman then told McDermott that if they tried to go in the house she would attempt to stop them. McDermott responded by stating, "if you attempt to stop us from going inside the house, I will have to arrest you." Cauffman replied, "[y]ou're going to have to do what you have to do." Eventually White came out of the house with his face covered in dried blood and stated, "I dare you to go in that f***ing house." Laws and Phillips took White into custody. Both Cauffman and White informed the officers that there were two aggressive dogs inside the house.

(4) Cauffman, seeing that White was being taken into custody, ran towards the door that White had just exited. McDermott followed her. McDermott testified that he needed to get inside the house to see if anyone was injured and needed police or medical assistance. McDermott was concerned for several reasons: the blood he observed on White's face, the inconsistent statements that Cauffman told him, Cauffman's attempt to get the police to leave, and his belief that there were other people inside the house.

(5) Cauffman entered the house, turned around, and threw all of her weight into the door. The door slammed into McDermott's arm which went through a pane of glass in the door. McDermott then stepped back from the door, observed his injuries, and told Cauffman not to slam the door again. Cauffman,

3

however, slammed the door on McDermott's foot. McDermott then reached through the opening in the door and shot Cauffman with a taser. McDermott testified that he shot Cauffman with a taser because: he could feel blood starting to come down his arm, there were other people in the house, there were aggressive dogs in the house, Cauffman was not complying with his orders, and Cauffman was attempting to assault him with the door.

(6) McDermott ordered Cauffman to roll over and put her arms behind her back. Cauffman did not respond. McDermott struck Cauffman with his foot two or three times in the leg and abdomen.[5] McDermott attempted to use his taser on Cauffman again, but she backed away. He attempted to use his taser a third time, but his hands were caught in the wires and McDermott shocked himself. McDermott then drew his nightstick and told Cauffman to put her hands behind her back. This time Cauffman complied.

(7) After this incident, McDermott was transported to the Christiana Hospital emergency room where ten sutures were put in his arm. The hospital did not treat his foot. However, McDermott had trouble walking for five days afterwards.

---

[5] While McDermott was doing this, he admitted that he was angry and yelled at Cauffman, including calling her a "b***h."

(8)     This Court reviews a trial court's refusal to give a lesser included offense jury instruction *de novo*.[6]  The trial court must instruct the jury "only if 'there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense[s].'"[7]  As a result, "it is not enough that a defendant could be convicted of a lesser charge if he had been indicted for it; rather, the evidence introduced in the case must support a jury verdict convicting the defendant of the lesser crime *rather than* the indicted crime."[8]

(9)     The incident occurred on June 20, 2013.  At the time, the Resisting Arrest statute, 11 *Del. C.* § 1257, provided that:

> (a)     A person is guilty of resisting arrest with force or violence when:
>
> (1) The person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person by use of force or violence towards said peace officer; or
>
> (2) Intentionally flees from a peace officer who is effecting an arrest against them by use of force or violence towards said peace officer; or
>
> (3) Injures or struggles with said peace officer causing injury to the peace officer.
>
> Resisting arrest with force or violence is a class G felony.

---

[6] *Dickerson v. State*, 975 A.2d 791, 797 (Del. 2009).

[7] *Ward v. State*, 575 A.2d 1156, 1159 (Del. 1990) (quoting 11 *Del. C.* § 206(c)).

[8] *Ward*, 575 A.2d at 1159 (citing *Williams v. State*, 494 A.2d 1237, 1241-42 (Del. 1985); *Matthews v. State*, 310 A.2d 645, 646 (Del. 1973)).

(b) A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest.

Resisting arrest is a class A misdemeanor.[9]

(10) Cauffman argues that had the jury been instructed on the lesser included offense, she would have been found guilty of the misdemeanor Resisting Arrest and not the felony Resisting Arrest. The difference between felony and misdemeanor Resisting Arrest is that, among other factors, felony Resisting Arrest requires force or violence towards, or injury to, the peace officer.[10] Cauffman contends that her counsel would have persuaded the jury that, even though she tried to avoid detention, she did not intend to injure McDermott.

(11) Cauffman's argument is based on the belief that the element "injury to the peace officer"[11] of Section 1257(a)(3) of the felony Resisting Arrest statute imposes guilt only if a person intends to cause injury. More specifically, Cauffman argues that 11 *Del. C.* § 252 provides that when a statute sets forth a state of mind required for the commission of an offense, without distinguishing between the different elements of the offense, the required state of mind applies to all elements

---

[9] *See* 2014 Del. Laws Ch. 259 (S.B. 179) (eff. June 18, 2014). The Resisting Arrest statute, 11 *Del. C.* § 1257, was amended in 2014. The amendments effected in 2014 are not relevant here.

[10] *Compare* 11 *Del. C.* § 1257(a) *with* 11 *Del. C.* § 1257(b).

[11] *See* 11 *Del. C.* § 1257(a)(3).

6

of the offense.[12]  Because Section 1257(a)(1) and (a)(2) include the word "intentionally," Cauffman contends that liability under Section 1257(a)(3) requires a person to have caused injury "intentionally."

(12)   The problem with Cauffman's argument is that Section 1257 *does* distinguish between the different elements of the offense.[13]  The statute prescribes three different scenarios under which a person can be found guilty of felony Resisting Arrest, as evidenced by three subsections separated by a disjunctive "or."[14]  The first two subsections require proof of intentional conduct, whereas the third subsection does not expressly set forth the state of mind required for a person to be found guilty of that criminal offense.[15]  Given that the General Assembly has chosen to employ the word "intentionally" in only two of the three subsections of the statute, it is reasonable to assume that the General Assembly intended to distinguish among those subsections.[16]  Accordingly, we reject Cauffman's

---

[12] *See* 11 *Del. C.* § 252 ("When a statute defining an offense prescribes the state of mind that is sufficient for the commission of the offense, without distinguishing among the elements thereof, the provision shall apply to all the elements of the offense, unless a contrary legislative purpose plainly appears.").

[13] *See* 11 *Del. C.* § 1257.

[14] *Id.*

[15] *Id.*

[16] *See Watson v. State*, 2010 WL 376882, at *2 (Del. Jan 6, 2010) ("We assume that the General Assembly 'inserted every provision into a legislative enactment for some useful purpose and construction;' thus, when the General Assembly chooses to employ different terms in various parts of a statute, we find it equally reasonable to assume that the General Assembly intended to distinguish between those terms." (quoting *Colonial Ins. Co. v. Ayers*, 772 A.2d 177, 181 (Del. 2001))).

contention that Section 252 requires a specific intent to cause injury in order to impose guilt under the third subsection.

(13)  This interpretation is consistent with the intent of the General Assembly as expressed by the statute.  The maxim of statutory interpretation *expressio unius est exclusio alterius* -- the "expression of one thing is the exclusion of another" -- which "provides that 'where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are affirmatively or negatively designated, *there is an inference that all omissions were intended by the legislature.*'"[17]

(14)  Cauffman next contends that reading 11 *Del. C.* § 1257 to require a state of mind less stringent than intentional conduct contravenes the purpose of the Delaware Criminal Code.  This argument is similarly misplaced.  Section 201 of Title 11 establishes that one of the general purposes of the Criminal Code is "[t]o differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor."[18]  Section 1257 accomplishes that purpose by differentiating between, on the one hand, the use force or violence against a police officer, and on the other hand, actually causing injury to the police officer.  It is reasonable for a statute to differentiate between not injuring an officer

---

[17] *Brown v. State*, 36 A.3d 321, 325 (Del. 2012) (emphasis added) (quoting *Leatherbury v. Greenspun*, 939 A.2d 1284, 1291 (Del. 2007)).

[18] 11 *Del. C.* § 201(4).

8

and injuring an officer. Construing Section 1257(a)(3) to not require a specific intent to cause injury does not contravene the Delaware Criminal Code. Here, Cauffman acknowledged that she struggled with the police officer and that the police officer was injured. Thus, there was no reasonable basis for the jury to acquit Cauffman of felony Resisting Arrest and yet convict her of the lesser included offense of misdemeanor Resisting Arrest. Accordingly, because 11 *Del. C.* § 1257(a)(3) did not require proof that Cauffman intended to injure a peace officer, there was no reasonable basis for the jury to convict her of the lesser included offense of misdemeanor Resisting Arrest, rather than felony Resisting Arrest.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice

9