# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,           )
                             )
                             )
                             )
v.                           )          I.D. No. 1602007591
                             )
                             )
IMEIR MURRAY,                )
                             )
        Defendant.           )


Submitted: October 25, 2016
Decided:  January 11, 2017
Opinion Issued:  April 13, 2017
Corrected:  April 27, 2017

## OPINION

*Upon Defendant Imeir Murray's Motion to Dismiss,*
**DENIED.**


Cynthia F. Hurlock, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Colleen E. Durkin, Esquire, and Matthew C. Buckworth, Esquire, Collins & Associates, Wilmington, Delaware, Attorneys for Defendant Imeir Murray.


**WALLACE, J.**

## I.   INTRODUCTION

Just over a year ago, Delaware decriminalized the act of possessing a small quantity of marijuana for personal use. This motion, brought by a criminal defendant arrested shortly after that enactment, brings to the fore some underexamined (or, more likely, some wholly unanticipated) consequences of that change.

## II.   STATUTORY BACKGROUND:
### DELAWARE'S FAST-CHANGING DRUG LAWS[1]

In 2011, at the urging of the Drug Law Revisions Committee, Delaware repealed significant portions of its extant criminal drug code and replaced it with laws creating three main drug crimes.[2] The least serious drug offenses – those prohibiting simple possession of controlled substances were: (1) re-written; (2) enumerated as Sections 4763 and 4764 of Title 16; (3) placed within the original jurisdiction of the Court of Common Pleas; and, (4) assigned the lowest criminal penalties.[3]

---

[1]   For simplicity's sake, the statutory history recounted here and referenced throughout this Opinion will speak only to the changes made and the present statutory language applicable to adults who violate Delaware's marijuana and firearms laws.

[2]   *See* Del. H.B 19 syn., 146th Gen. Assem., 78 Del. Laws ch. 13 (2011).

[3]   *See id.* (noting the new drug laws classified "the simplest form of unlawful [drug] possession" — *i.e.*, those defined in the new 16 *Del. C.* §§ 4763(a) & 4764(b) — as Delaware's lowest grade misdemeanors); *id.* at § 58 (stating simple possession of any controlled substance other than marijuana became a class B misdemeanor); *id.* at § 61 (stating simple possession of marijuana became an unclassified misdemeanor).

That same 2011 Act also introduced a new felony to the Delaware Criminal Code. That crime defined a brand-new set of persons prohibited from possessing or controlling certain weapons:

> Any person, if the deadly weapon is a semi-automatic or automatic firearm, or a handgun, who, at the same time, possesses a controlled substance in violation of § 4763, or § 4764 of Title 16.[4]

As the rather simple language manifests, this statute created this new low-grade felony "for a person who possesses a handgun or semi-automatic or automatic firearm at the same time as the person possesses a controlled substance."[5]

Four years later, Delaware reduced the penalties for simple possession of marijuana even further. The provisions outlawing the illicit possession of marijuana were: (1) again re-written; (2) still enumerated as Section 4764 of Title 16; (3) conferred split original jurisdiction between the Court of Common Pleas and the Justice of the Peace Court; and, (4) assigned the lowest criminal misdemeanor and civil violation status.[6] As applicable to this case, the law now

---

[4]    *Id.* at § 5 (codified at 11 *Del. C.* § 1448(a)(9) (2011) [hereinafter "PFBPP"]).

[5]    *Id.* at syn.

[6]    *See* Del. H.B. 39 syn., 148th Gen. Assem., 80 Del. Laws ch. 38 (2015); *id.* at § 2 (creating new civil violation for possession of less than an ounce of marijuana for personal use and leaving that offense within § 4764 of Title 16); *id.* at § 5 (conferring original jurisdiction over criminal marijuana possession offense to the Court of Common Pleas and original jurisdiction over civil marijuana possession violation to the Justice of the Peace Court).

provides:

> Any person 18 years of age or older, but under 21 years of age, who [knowingly or intentionally possesses 1 ounce or less of marijuana in the form of leaf marijuana] shall be assessed a civil penalty of $100 for the first offense . . . .[7]

When simple possession of marijuana became a civil offense, no change was made to the 2011 PFBPP statute prohibiting a person from possessing a handgun and a controlled substance at the same time.

It is against this backdrop that the Court examines the viability of the two indicted offenses that Defendant Imeir Murray faces.

## III.   FACTUAL AND PROCEDURAL BACKGROUND

On February 11, 2016, Imeir Murray was asleep in his bedroom of his family's apartment when law enforcement came to execute an arrest warrant for his mother. A subsequent search of Murray's bedroom revealed two caches of marijuana. One was in his dresser; the other was on a lower shelf of his closet, mere feet from his head as he slept. On an upper shelf of that same closet was a loaded semi-automatic handgun. Police arrested Murray that day.

Murray was indicted by the Grand Jury for one count of possession of a firearm by a person prohibited and one count of possession of marijuana as an

---

[7]     DEL. CODE ANN. tit. 16, § 4764(c) (2015) (defining the offense of simple possession of marijuana and setting forth its classification, when a first offense, as a civil violation); *id.* at § 4701(33) (defining "personal use quantity" and "leaf marijuana").

unclassified misdemeanor offense. At that time, it was believed that the marijuana weighed more than an ounce.[8]

After Murray's arrest and indictment, the State's drug lab report confirmed that the substance seized from Murray's bedroom was indeed marijuana. That report also showed that the total drug weight of both caches was 22.63 grams.[9] Under Delaware law, one ounce of "leaf marijuana" or less is deemed a "personal use quantity" of marijuana.[10] And now, under Delaware law, the simple possession of a personal use quantity of marijuana is a civil, not criminal, offense.[11]

It is undisputed that the amount of marijuana found in Murray's room exposes him to, at most, a civil marijuana possession violation. It is disputed what

---

[8] *See* Indictment, *State v. Murray*, I.D. No. 1602007591 (Del. Super. Ct. Apr. 25, 2016) (D.I. 14) (charging Murray with PFBPP, a felony, pursuant to 11 *Del. C.* § 1448(a)(9) and misdemeanor possession of marijuana under 16 *Del. C.* § 4764(b)); St.'s Resp., *State v. Murray*, I.D. No. 1602007591, at 1 n.1 (Del. Super. Ct. Oct. 11, 2016) (the preliminary estimated weight of the marijuana seized was 30 grams).

[9] *See* Def.'s Mot. to Dismiss Ex. A., *State v. Murray*, I.D. No. 1602007591 (Del. Super. Ct. Sept. 8, 2016).

[10] One ounce is equal to approximately 28.35 grams. *See* WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE, Weights and Measures Table (1996) (showing 28.35 grams are the metric system equivalent of one U.S. ounce). Without doubt, this weight conversion also applies to leaf marijuana. *See Marijuana Weight: Grams, Quarters and Ounces Explained*, STUFF STONERS LIKE, http://stuffstonerslike.com/2016/01/marijuana-weight-grams-quarters-and-ounces-explained/ (last visited Apr. 12, 2017).

[11] *See* DEL. CODE ANN. tit. 16, §§ 4764(c), 4701(33) (2015).

legal effect that fact has on the two charges for which Murray was indicted and faces trial in this Court.[12]

## IV. DISCUSSION

Murray suggests that his two indicted charges should be dismissed as a matter of law. First, as to the possession of marijuana count, Murray argues that because the weight of the drug actually recovered qualifies only as a "personal use quantity," he committed only a civil violation and the indicted drug count should be "dismissed" here. Second, as to the PFBPP count, Murray argues that the weapons possession statute wasn't intended to be applied in connection with a civil violation quantity of marijuana. So, he contends, his second indicted charge should also be dismissed. Murray is wrong on both counts.

### A. MURRAY IS NOT DUE OUTRIGHT DISMISSAL ON THE POSSESSION OF MARIJUANA COUNT; RATHER, HE FACES POTENTIAL LIABILITY FOR A CIVIL VIOLATION UNDER TITLE 16, SECTION 4764(c).

In Count II of his indictment, Murray was charged with marijuana possession as a criminal misdemeanor under 16 *Del. C.* § 4764(b). It turned out, however, that the later lab report revealed he may only be liable for marijuana possession as a civil violation under 16 *Del. C.* § 4764(c). When the statutory creature of a "violation" subject only to a "civil penalty" was born into Delaware's

---

[12] Def.'s Mot. to Dismiss 2–3; St.'s Resp. 2.

-6-

criminal and drug codes, it was, unfortunately, not concomitantly framed a statutory (or other) procedural home in which to dwell.[13]

There have since been efforts by some Delaware courts to build the structure needed, but it has become increasingly clear that there is little solid footing.[14] So how does this Court accommodate a "civil violation"[15] that arrives via indictment,

---

[13] *See, e.g.*, Del. S.B. 63, 143d Gen. Assem., 75 Del. Laws ch. 204 (2005) (adding a new chapter the Delaware Motor Vehicle Code to provide a framework for enforcing civil *traffic* offenses) (emphasis added).

[14] *See Preface*, Del. J.P. Ct. Civ. Viol. R. (adopted June 1, 2013) ("Statutory violations which result in civil penalties present the Justice of the Peace Court with unique issues. Although the penalty imposed for a violation of these statutes is civil, the process by which the penalty is acquired and processed is similar to that of criminal matters. These unique circumstances are addressed by the following rules."). Other states too offer little consistent guidance on procedural issues for civil violations, such as the appropriate charging instruments, burden of proof, joinder with criminal matters, etc. *See also* MD. CODE ANN., LOCAL GOV'T § 11-207 (West 2013) (providing that for a Maryland "civil infraction," the defendant may be found guilty or not guilty, "the court shall apply the evidentiary standards provided by law for the trial of a criminal case", and "the burden of proof is the same as required by law in the trial of a criminal case."); *id.* at § 11-211 (stating that in Maryland, the "[a]djudication of a civil infraction is not a criminal conviction for any purpose."); MICH. COMP. LAWS ANN. § 600.8821 (West 2016) (In Michigan, after a "formal hearing," a judge "determines by a preponderance of the evidence that the defendant is responsible for a state civil infraction. . . ."); *id.* at § 600.8827 (a Michigan state civil infraction "is not a lesser included offense of a criminal offense."); N.J. Ct. R. 3:15-3(a) (stating "the court shall join any pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode" and a New Jersey Superior Court judge "shall sit as a municipal court judge" simultaneously with the jury hearing the criminal charge but renders the verdict him- or herself with the respect to the infraction based on the trial evidence, or on evidence heard outside the jury's presence if necessary); WASH. REV. CODE ANN. § 7.80.070 (West 2006) (stating a notice of civil infraction in Washington represents a determination that a civil infraction has been committed and that determination is final unless contested); *id.* at § 7.80.100 (stating in Washington, "[a] hearing held for the purpose of contesting the determination that a civil infraction has been committed shall be without a jury" and the burden is upon the state "to establish the commission of the civil infraction by a preponderance of the evidence.").

[15] The situation of having no statutory definition of "civil violation" in Delaware's criminal or drug codes is made only worse by the mixing in of terms that are clearly defined elsewhere in those codes and applicable to crimes and criminal procedure. *E.g.*, DEL. CODE ANN. tit. 16,

information, or, as here, legal happenstance? With the only blueprint it has: its own Criminal Rule 57(d).[16]

Delaware statutory law and this Court's rules provide for the consideration of an included offense by a jury or judge when the State's evidence is insufficient to prove the originally indicted offense.[17] In turn,

> A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when . . . [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged.[18]

---

§ 4764 (2015) (dubbing possession of marijuana under § 4764(c) a "civil violation"); *id.* at § 4764(c) (providing that an individual like Murray would be "assessed a civil penalty of $100 for the first *offense*") (emphasis added); *id.* at § 4764(c) (referring to the proscription in 16 *Del. C.* § 4764(c) as "a civil offense" and later requiring payment within a certain time "of final adjudication of the *violation*") (emphasis added); *id.* at tit. 11, § 233(a) (defining an "offense" as synonymous with "crime" and that it is "an act or omission forbidden by a statute of this State and punishable *upon conviction* by . . . imprisonment . . . fine . . . or [o]ther penal discipline) (emphasis added); *id.* at tit. 11, § 233(c) (noting that a kind of "offense" is a "violation") (emphasis added).

[16]     Del. Super. Ct. Crim. R. 57(d) ("Procedure Not Provided. In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule *or in any lawful manner* not inconsistent with these rules or the rules of the Supreme Court.") (emphasis added).

[17]     *See State v. Cox*, 851 A.2d 1269, 1274–75 (Del. 2003) (explaining Delaware's lesser included doctrine and procedures for jury trials); *Ramsey v. State*, 996 A.2d 782, 784–86 (Del. 2010) (explaining the same for bench trials).

[18]     DEL. CODE ANN. tit. 11, § 206(b)(1) (2015). *See also* Del. Super. Ct. Crim. R. 31(c) ("Conviction of Included Offense. The defendant may be found guilty of an offense included in the offense charged in accordance with 11 *Del. C.* § 206."); *Ward v. State*, 575 A.2d 1156, 1158 (Del. 1990) ("A defendant may be convicted of a crime for which he has not been indicted if all of the elements of that crime are included in the definition of the crime with which he has been charged.").

-8-

And, by virtue of its return, "a defendant is . . . on notice of all lesser-included offenses under an offense charged in an indictment."[19] While his is now a lesser-included civil violation, Murray has been no less "on notice" that a liability finding for that possession of marijuana violation was possible. That this has been determined pre-trial is of no moment.

"Leave to amend an indictment to state a lesser-included offense is a matter within this Court's discretion to permit."[20] Superior Court Criminal Rule 7(e) permits such an amendment "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."[21] Because Murray was already on notice of potential lesser-included offenses of the indicted marijuana possession crime, he is hardly prejudiced by amendment of the indictment to charge the civil violation and proceedings on that civil violation.[22] "Dismissal" of the marijuana offense is not required.

---

[19] *State v. Grossberg*, 1998 WL 278391, at * 1 (Del. Super. Ct. Apr. 13, 1998).

[20] *Grossberg*, 1998 WL 278391, at * 1 (citation omitted).

[21] Del. Super. Ct. Crim. R. 7(e).

[22] For the reasons mentioned above, how precisely to proceed on that civil violation is a thorny issue still to be resolved by the Court and counsel. *See, e.g., supra* notes 14 & 15. That issue, however, need not be resolved in this Opinion.

**B. Under the Plain Reading of Title 11, Section 1448(a)(9), One Cannot Possess a Semi-automatic Handgun and Marijuana, Regardless of the Amount, "At the Same Time." If This Statutory Prohibition is to be Eliminated, It is Up to the General Assembly, Not This Court, To Do So.**

In Count I of the indictment, Murray is charged under 11 *Del. C.* § 1448(a)(9). This prohibits the possession of a firearm by "[a]ny person, if the deadly weapon is a semi-automatic or automatic firearm, or a handgun, who, at the same time, possesses a controlled substance in violation of § 4763, or § 4764 of Title 16."[23] Murray argues that because he possessed a "personal use quantity", he cannot be found guilty under the PFBPP statute. Not so.

As our Supreme Court recently reminded,

> [W]e do not sit as an überlegislature to eviscerate proper legislative enactments. It is beyond the province of the courts to question the policy or wisdom of an otherwise valid law. Rather we must take and apply the law as we find it, leaving any desirable changes to the General Assembly.[24]

Murray doesn't agree. He thinks that this Court should ignore the plain language of an undoubtedly properly enacted criminal statute, because in his view the General Assembly "could not possibly have contemplated" and "would have never imagined a scenario" where one's illegal possession of marijuana – now a civil

---

[23]   DEL. CODE ANN. tit. 11, § 1148(a)(9) (2015).

[24]   *Sheehan v. Oblates of St. Francis de Sales,* 15 A.3d 1247, 1259 (Del. 2011) (citation omitted).

-10-

offense – could prohibit one from simultaneously possessing a semi-automatic handgun.[25]

"The role of the judiciary in interpreting a statute is to determine and give effect to the legislature's intent."[26] When the statute itself is unambiguous, then its plain language controls.[27] "In that instance, a court must apply the statutory language to the facts of the case before it."[28] The words of 11 *Del. C.* § 1448(a)(9) are plain and simple. As such, this Court's only job is to apply the literal words of the statute to the facts of Murray's case.[29]

Eleven *Del. C.* § 1448(a)(9) prohibits simultaneous possession of a firearm and a controlled substance. Mere simultaneous *possession* of both items is all that is required for a conviction under the statute.[30]

---

[25]     Def.'s Reply 2.

[26]     *Ross v. State*, 990 A.2d 424, 428 (Del. 2010) (citing *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007)).

[27]     *See In re Adoption of Swanson*, 623 A.2d 1095, 1096–97 (Del. 1993) ("If the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of those words."); *Hoover v. State*, 958 A.2d 816, 819 (Del. 2008) ("If the language of the statute is unambiguous, the plain meaning of the words controls.") (citing *Ingram v. Thorpe*, 747 A.2d 545, 547 (Del. 2000)).

[28]     *Ross*, 990 A.2d, at 428.

[29]     *See DiStefano v. Watson*, 566 A.2d 1, 4 (Del. 1989).

[30]     *See Van Vliet v. State*, 2016 WL 4978436, at *3 (Del. Sept. 16, 2016) (noting that it is drug possession that is the required element of 11 *Del. C.* § 1448(a)(9), not *operating* a drug lab or *manufacturing* the subject drug) (emphasis added), *aff'g State v. Van Vliet*, 2015 WL 5554058, at * 1 (Del. Super. Ct. Sept. 18, 2015) (distinguishing between manufacturing and

-11-

Still, Murray argues, his alleged possession of a "personal use quantity" cannot render him a person prohibited under § 1448(a)(9) because the drug possession statutes were recently amended to "decriminalize the possession or private use of a personal use quantity of marijuana;"[31] that possessory act, in his case, is now only a civil violation with a financial penalty.[32] Even so, possession of marijuana in any amount, a "personal use quantity" or not, remains illegal under Delaware law. In fact, it still remains an act "in violation of . . . § 4764 of Title 16."[33]

To gain a PFBPP conviction, the State need only prove that Murray possessed both the handgun and the marijuana at the same time. Murray correctly points out that the language of 11 *Del. C.* § 1448(a)(9) was added to the statute in 2011 during Delaware's drug law revisions.[34] Murray incorrectly concludes that

---

possessing a controlled substance and finding that it is drug possession only that need be proven under 11 *Del. C.* § 1448(a)(9)).

[31] Del. H.B. 39 syn., 148th Gen. Assem., 80 Del. Laws ch. 38 (2015).

[32] *See* DEL. CODE ANN. tit. 16, § 4764(c) (2015) ("Any person [who knowingly or intentionally possesses a personal use quantity of a controlled substance or a counterfeit controlled substance classified in § 4714(d)(19) of this title, except as otherwise authorized by this chapter] shall be assessed a civil penalty of $100 for the first offense . . . .").

[33] *See* DEL. CODE ANN. tit. 11, § 1448(a)(9) (2015) (qualifying one as a person prohibited from possessing a semi-automatic firearm or a handgun when he, at the same time, possesses a controlled substance "in violation of § 4763, or § 4764 of Title 16.").

[34] *See* Del. H.B. 19 syn., 146th Gen. Assem., 78 Del. Laws ch. 13 (2011).

this change meant that "the new (a)(9) section was developed to criminalize *drug dealing* while in possession of a gun" alone, not mere simultaneous possession of both items.[35] The plain language of the statute requires only simple (but illicit) possession of a controlled substance. And that is just what the State alleges here.

Undeterred, Murray goes on to assert that "[t]o prosecute individuals who are allegedly in possession of a firearm while committing a civil violation of marijuana possession is clearly not consistent with the General Assembly's intent when it drafted 11 *Del. C.* § 1448(a)(9)."[36] Because there was no such thing as a civil marijuana violation when that PFBPP provision was first introduced, the General Assembly certainly could have had no such intent then. But a court looks behind the statutory language only if the statute is ambiguous[37] – which it is not here. And the General Assembly is presumed to be aware of extant statutes relating to the same subject matter when it enacts a new provision.[38] For example

---

[35] Def.'s Mot. to Dismiss ¶ 13 (emphasis in original).

[36] *Id.* Murray never really develops this statement into a claim of statutory ambiguity, although that is in effect what he argues. *See Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985) ("Ambiguity may also arise from the fact that giving a literal interpretation to words of the statute would lead to such unreasonable or absurd consequences as to compel a conviction that they could not have been intended by the legislature.").

[37] *See, e.g., Ramirez v. Murdick*, 948 A.2d 395, 398 (Del. 2008); *Leatherbury v. Greenspun*, 939 A.2d 1284, 1288 (Del. 2007); *State v. Cooper*, 575 A.2d 1074, 1075–76 (Del. 1990).

[38] *See Del. Dep't of Labor v. Minner*, 448 A.2d 227, 229 (Del. 1982) ("It is assumed that when the General Assembly enacts a later statute in an area covered by a prior statute, it has in mind the prior statute and therefore statutes on the same subject must be construed together so

-13-

here, when it made the lowest class of illegal marijuana possession a civil, rather than criminal, offense after putting § 1448(a)(9) on the books just fifty-one months earlier. If the General Assembly wanted to then exclude the newly-minted civil offense of possessing a "personal use quantity" of marijuana from triggering that recent PFBPP provision, it could have easily done so. It did not.

When "a statute is unambiguous, and an application of the literal meaning of its words would not be absurd or unreasonable, there is no legal basis for an interpretation of those words by the court."[39] But even if the Court needed to consult other sources it might to discern § 1448(a)(9)'s meaning, Murray's supposition would fair no better.

The Synopsis of the enactment that created the new weapons prohibition was clear:[40] it was created "for a person who *possesses* a handgun or semi-automatic or automatic firearm at the same time as the person *possesses* a controlled

---

that effect is given to every provision unless there is an irreconcilable conflict between the statutes, in which case the later supersedes the earlier.") (quoting *Green v. Cnty. Council of Sussex Cnty.*, 415 A.2d 481, 484 (Del. Ch. 1980)). *See, e.g., State v. Hollobaugh*, 297 A.2d 395, 396 (Del. Super. Ct. Oct. 25, 1972). *See also Cooper*, 575 A.2d at 1076–77 (the General Assembly is also presumed to be aware of judicial decisions interpreting similar or identical language).

[39] *DiStefano*, 566 A.2d, at 4.

[40] *See Carper v. New Castle Cnty. Bd. of Ed.*, 432 A.2d 1202, 1205 (Del. 1981) (stating the synopsis of a bill is "a proper source from which to glean legislative intent"); *Hoover v. State*, 958 A.2d 816, 820 (Del. 2008) ("[T]his Court may refer to parts of the legislative record to establish the purpose of legislation where the record reveals more information about the enactments.").

substance."[41]  Far from being an unreasonable or absurd prohibition, it is one similar, if not more narrow, than that found in federal[42] and sister states' statutory schemes.[43]  As federal courts have without fail found, such a law "proportionally advances the government's legitimate goal of preventing gun violence"[44] by aiming "to keep guns out of the hands of presumptively risky people."[45]  And that may rightly include those who *illegally* use or possess marijuana.[46]

---

[41]  Del. H.B. 19 syn., 146th Gen. Assem., 78 Del. Laws ch. 13 (2011) (emphasis added).

[42]  *Compare* 18 U.S.C. § 922(g)(3) (under the federal analogue it is unlawful for anyone "who is an unlawful user of or addicted to any controlled substance" to possess a firearm), *with* DEL. CODE ANN. tit. 11, § 1448(a)(9) (2015) (under Delaware law it is unlawful for one to possess a semi-automatic firearm or a handgun when he, "at the same time, possesses a controlled substance in violation of" Delaware drug possession statutes).  While the federal statute prohibits a certain group of persons – those who unlawfully use drugs or are addicted to them – from possessing a firearm, the Delaware statute requires that the gun and drugs be possessed "at the same time."

[43]  *See United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010) (listing 25 states and D.C. that had by that time outlawed possession or carrying of firearms by habitual drug users).

[44]  *United States v. Carter*, 750 F.3d 462, 470 (4th Cir. 2014).  *See, e.g., United States v. Patterson*, 431 F.3d 832, 835–36 (5th Cir. 2005); *Yancey*, 621 F.3d 681, 684; *United States v. Seay*, 620 F.3d 919, 924–25 (8th Cir. 2010); *United States v. Dugan*, 657 F.3d 998, 999–1000 (9th Cir. 2011); *United States v. Conrad*, 923 F. Supp. 2d 843, 850–51 (W.D. Va. 2013); *Roberge v. United States*, 2013 WL 4052926, at *18–19 (E.D. Tenn. Aug. 12, 2013).

[45]  *Yancey*, 621 F.3d at 683 (citing *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 (1983)).  *See United States v. Cheeseman*, 600 F.3d 270, 280 (3d Cir. 2010) (noting that in passing the federal prohibition, Congress expressed its intention to "keep firearms out of the possession of drug abusers, a dangerous class of individuals").

[46]  *See Wilson v. Lynch*, 835 F.3d 1083, 1094 (9th Cir. 2016) ("It is beyond dispute that illegal drug users, including marijuana users, are likely as a consequence of that use to experience altered or impaired mental states that affect their judgment and that can lead to irrational or unpredictable behavior."); *Carter*, 750 F.3d, at 470 ("At bottom, we conclude that the empirical evidence and common sense support the government's contention that drug use, including marijuana use, frequently coincides with violence."); *Yancey*, 621 F.3d at 687

-15-

Still, it may well be that during the many recent writes and re-writes of our drug laws the General Assembly never considered the use of non-criminal marijuana possession as a potential element of the newest PFBPP crime. Sure, it's conceivable that if it ever did, the legislature might choose to eliminate non-criminal marijuana possession as an element of that compound weapons crime. But, the legislature has not done so. And, this Court cannot do so in its stead.[47] The unambiguous current language of § 1448(a)(9), the other clues one might use (if needed) to understand that language, and the easily discerned policy behind that language leaves the reader to conclude that language means precisely what it says – in Delaware one is prohibited from possessing a handgun and even a small amount of marijuana at the same time.

---

(observing when discussing the federal statute's application to an "unlawful user" of marijuana: "We have observed before that there is no constitutional problem with separating guns and drugs.").

[47] *See Seth v. State*, 592 A.2d 436, 440 (Del. 1991) ("[W]hen statutory language is both clear and consistent with other provisions of the same legislation and with legislative purpose and intent, a court must give effect to that intent because it is for the legislature, and not the courts, to declare the public policy of the State."). *See also State v. Cephas*, 637 A.2d 20, 28 (Del. 1994) ("It is the General Assembly and not this Court which has the prerogative to legislate. This Court's role is to construe existing legislation.").

## V.  CONCLUSION

For the foregoing reasons, Murray's motion to dismiss the two counts of his Indictment must be **DENIED**.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge